COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-08-033-CV

 

 

JERRY W. WILLIAMS, JR.                                                     APPELLANT

 

                                                      V.

 

DANIELLE MARIE WILLIAMS                                                    APPELLEE

 

                                                  ------------

 

              FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------

I.  INTRODUCTION

Appellant Jerry W. Williams, Jr. appeals from a
divorce decree dissolving his marriage to Appellee Danielle Marie
Williams.  In four issues, Jerry argues
that the trial court erred by mischaracterizing property, incorrectly valuing
the marital estates, and improperly dividing the community estate.  We will affirm.








II.  FACTUAL
AND PROCEDURAL BACKGROUND

The trial court signed a final decree of divorce
on January 12, 2006, dissolving Jerry=s and
Danielle=s
marriage.  The trial court entered
findings of fact, which included in part the following findings relevant to the
Williams=s
property at 881 Blackjack Road, referred to as the Aranch
property@:

[Danielle] and [Jerry]
purchased the [ranch property,] on August 7, 1997, and had a note with a final
maturity payment due on August 1, 2000.

 

When the final maturity
payment became due in the summer of 2000, [Danielle] and [Jerry] entered into
an agreement with [Danielle=s] mother Rita Soto Lang and her husband Paul
Lang.

 

The agreement was for Mr.
and Mrs. Lang to pay the final maturity payment on the ranch property in August
of 2000, and [Danielle] and [Jerry] would then pay Mr. and Mrs. Lang.

 

The Langs made two
payments in August of 2000, one for $50,000.00 on August 8, 2000, and the[n]
one for $62,000.00 on August 25, 2000.

 

[Danielle] and [Jerry] made payments to Mr. And
Mrs. Lang.

In 2002, the Langs
attempted to have a Promissory Note in the amount of $112,000.00 and secured by
the ranch property executed by [Danielle] and [Jerry]. [Danielle] did sign the
promissory note on May 6, 2002, however, [Jerry] did not sign.

 

On April 19, 2004, the
Langs executed a document purporting to convey a gift solely to [Danielle] the
balance of the property loan of $51,097.24. 
The same document also purports to acknowledge a gift to [Danielle] on
August 8, 2000, for the original $50,000.00 payment made by the Langs.








Because the property was
originally purchased as community property and the subsequent loan was a debt
of both parties[,] the court finds that any forgiveness of debt benefitted the
community estate[,] and [Danielle] has no claim for separate property
reimbursement from the community estate.

 

The court finds that
[Danielle] does not have a separate property claim in the [ranch property].

 

The trial court entered conclusions of law, which included in part the
following:

Because the ranch
property was originally purchased as community property and the subsequent loan
by the Langs was a debt of the community estate, the court concludes as a
matter of law that any forgiveness of debt by the Langs benefited the community
estate and [Danielle] has no claim for separate property reimbursement from the
community estate in regards to the ranch property.

 








Danielle appealed and challenged the trial court=s
findings of fact and conclusions of law providing that she did not have a
separate property claim in the ranch property. 
See Williams v. Williams, No. 02-06-00143-CV, 2007 WL 79698, at
*2 (Tex. App.CFort Worth Jan. 11, 2007, no
pet.) (mem. op.).  In our memorandum
opinion, we reasoned that the trial court did not abuse its discretion with
regard to its denial of Danielle=s
separate property claim based on the $50,000 check that the Langs issued on
August 8, 2000.  Id. at *4B5.  However, we reversed the trial court=s judgment
as to the property division and remanded the case to the trial court to
re-divide the parties= community estate because the
trial court erred by characterizing the Langs= $51,097.24
gift to Danielle of the remaining balance of the ranch property loan as
community property.  Id. at *5B7.

On remand, the trial court conducted a ARehearing
on Property Issues,@ in which it took judicial
notice of Aeverything that was admitted in
the previous trial.@ 
On October 15, 2007, the trial court signed a final decree of divorce,
and it later entered findings of fact and conclusions of law.  As part of its property division, the trial
court awarded Danielle a $101,097.24 separate property interest in the ranch
property, finding that she, Aby gifts
from her mother and stepfather, acquired a $101,097.24 separate property claim
against the Ranch Property, donative intent on the part of the Langs having
been evidenced over a year before the divorce was even filed.@  Now Jerry appeals.

III.  PROPERTY DIVISION

A. 
Standard of Review








A trial judge is charged with dividing the
community estate in a Ajust and right@ manner,
considering the rights of both parties. 
Tex. Fam. Code Ann. ' 7.001
(Vernon 2006); Moroch v. Collins, 174 S.W.3d 849, 855 (Tex. App.CDallas 2005,
pet. denied).  The court has broad
discretion in making its just and right division, and absent a clear abuse of
discretion, we will not disturb that division. 
Murff v. Murff, 615 S.W.2d 696, 698B99 (Tex.
1981); Boyd v. Boyd, 67 S.W.3d 398, 406 (Tex. App.CFort
Worth 2002, no pet.).  To determine
whether a trial court abused its discretion, we must decide whether the trial
court acted without reference to any guiding rules or principles; in other
words, we must decide whether the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241B42 (Tex. 1985), cert. denied,
476 U.S. 1159 (1986).

Findings of fact entered in a case tried to the
court have the same force and dignity as a jury=s
answers to jury questions.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court=s
findings of fact are reviewable for legal and factual sufficiency of the
evidence to support them by the same standards that are applied in reviewing
evidence supporting a jury=s
answer.  Oritz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994).








In family law cases, however, the traditional
sufficiency standard of review overlaps with the abuse of discretion standard
of review; therefore, legal and factual insufficiency are not independent
grounds of error but are relevant factors in our assessment of whether the
trial court abused its discretion.  Boyd
v. Boyd, 131 S.W.3d 605, 611 (Tex. App.CFort
Worth 2004, no pet.).  Accordingly, to
determine whether there has been an abuse of discretion because the evidence is
legally or factually insufficient to support the trial court=s
decision, we engage in a two-pronged inquiry: 
(1) did the trial court have sufficient evidence upon which to exercise
its discretion, and (2) did the trial court err in its application of that
discretion?  Id.; Moroch,
174 S.W.3d at 857.  The applicable
sufficiency review comes into play with regard to the first question.  Boyd, 131 S.W.3d at 611.  We then determine whether, based on the
elicited evidence, the trial court made a reasonable decision.  Id.

A party who seeks to assert the separate
character of property must prove that character by clear and convincing
evidence.  Tex. Fam. Code Ann. ' 3.003(b)
(Vernon 2006).  Clear and convincing
evidence is that measure or degree of proof that will produce in the mind of
the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established. 
Tex. Civ. Prac. & Rem. Code Ann ' 41.001(2)
(Vernon 2008); Tex. Fam. Code Ann. ' 101.007
(Vernon 2002); Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 31 (Tex.
1994).  This intermediate standard falls
between the preponderance standard of civil proceedings and the reasonable
doubt standard of criminal proceedings.  In
re G.M., 596 S.W.2d 846, 847 (Tex. 1980); State v. Addington, 588
S.W.2d 569, 570 (Tex. 1979).  While the
proof must weigh heavier than merely the greater weight of the credible
evidence, there is no requirement that the evidence be unequivocal or
undisputed.  Addington, 588 S.W.2d
at 570.








In reviewing the evidence for legal sufficiency,
we must determine whether the evidence is such that a factfinder could
reasonably form a firm belief or conviction that its finding was true.  Diamond Shamrock Ref. Co., L.P. v. Hall,
168 S.W.3d 164, 170 (Tex. 2005); Sw. Bell Tel. Co. v. Garza, 164 S.W.3d
607, 627 (Tex. 2004).  We must review all
the evidence in the light most favorable to the finding.  Hall, 168 S.W.3d at 170; Garza,
164 S.W.3d at 627.  This means that we
must assume that the factfinder resolved any disputed facts in favor of its
finding if a reasonable factfinder could have done so.  Hall, 168 S.W.3d at 170; Garza,
164 S.W.3d at 627.  We must also
disregard all evidence that a reasonable factfinder could have
disbelieved.  Hall, 168 S.W.3d at
170; Garza, 164 S.W.3d at 627.  We
must consider, however, undisputed evidence even if it is contrary to the
finding.  City of Keller v. Wilson,
168 S.W.3d 802, 817 (Tex. 2005); Hall, 168 S.W.3d at 170.  That is, we must consider evidence favorable
to the finding if a reasonable factfinder could and disregard evidence contrary
to the finding unless a reasonable factfinder could not.  Wilson, 168 S.W.3d at 827.

B.      Mischaracterization of Community Property








In his first issue, Jerry challenges the trial
court=s
finding that Danielle has a $101,097.24 separate property interest in the ranch
property.  He seems to contend that
Danielle failed to meet her burden of proving the separate property character
of the ranch property by clear and convincing evidence.[2]  Jerry also challenges the characterization of
Pflamenco, a horse, as Danielle=s
separate property.

Property possessed by either spouse at the
dissolution of the marriage is presumed to be community property, absent clear
and convincing evidence to the contrary. 
Tex. Fam. Code Ann. ' 3.003;
Boyd, 131 S.W.3d at 612.  In order
to overcome the community property presumption, the burden is on the spouse
claiming certain property as separate to trace and clearly identify the
property claimed to be separate.  Boyd,
131 S.W.3d at 612.  Tracing merely
involves establishing the separate origin of the property through evidence
showing the time and means by which the spouse originally obtained possession
of the property.  Id.








Property acquired by gift during marriage is
constitutionally and statutorily defined as separate property.  See Tex. Const. art. XVI, ' 15;
Tex. Fam. Code Ann. ' 3.001.  A gift is a voluntary transfer of property to
another made gratuitously and without consideration.  Hilley v. Hilley, 161 Tex. 569, 342
S.W.2d 565, 569 (1961); Roberts v. Roberts, 999 S.W.2d 424, 432 (Tex.
App.CEl Paso
1999, no pet.).  Three elements are
required to establish the existence of a gift: (1) intent to make a gift; (2)
delivery of the property; and (3) acceptance of the property.  Roberts, 999 S.W.2d at 432; Williams,
2007 WL 79698, at *4.  The donor=s intent
is the principal issue in determining whether a gift has been made.  See Hayes v. Rinehart, 65 S.W.3d 286,
289 (Tex. App.CEastland 2001, no pet.).  The person claiming that a gift was made must
prove the gift by clear and convincing evidence.  Id. 
A trial court has no authority to divest a spouse=s
interest in separate property.  Cameron
v. Cameron, 641 S.W.2d 210, 213 (Tex. 1982).

1.      Ranch Property

In our first memorandum opinion, we detailed the
evidence demonstrating that the Langs=
discharge of the $51,097.24 remaining debt was a gift to Danielle and,
accordingly, her separate property.  See
Williams, 2007 WL 79698, at *5B6.  We stated in part the following:

[Mrs. Lang] testified
that, with regard to the $62,000 check, it was her intention at the time that
it would be repaid.  On April 19, 2004,
the Langs signed a document which stated, AWe hereby gift the balance of the property loan
($51,097.24) for [the Ranch Property] to [Danielle].@ [Mrs. Lang] testified
that she prepared this document.  She
also testified that her intent was that it be a gift to her daughter and not to
[Jerry].  When asked the reason for the
gift, [Mrs. Lang] testified that it was because [Danielle] was struggling with
other bills and Awe just wanted to do it
for her sake.@

 








The trial court=s conclusion of law, that
the Langs made a loan that constituted community debt, was correct, because it
was a loan made to the parties during marriage. 
However, because forgiveness of debt can constitute a gift, and because
the testimony and the 2004 document demonstrated intent, delivery, and
acceptance of this gift, there was legally sufficient evidence that the Langs
intended to make a gift to [Danielle] of the forgiveness of the $51,097.24
debt. . . .

 

Because the discharge of
$51,097.24 was a gift to [Danielle], it was her separate property.

 

Id. (citations omitted).  At the rehearing after remand, Mr. Lang
testified that he intended to make a gift of the entire approximately $101,000
(consisting of the $51,097.24 debt forgiveness and the $50,000 check issued on
August 8, 2000) to Danielle.  Our opinion
in this appeal is unchanged.  We hold
that the trial court could have reasonably formed a firm belief or conviction
that the Langs gifted to Danielle a discharge of the debt on the ranch property
in the amount of $51,097.24.








Turning to the August 8, 2000 $50,000 check, we
determined in our previous opinion that the trial court could have reasonably
formed a firm belief or conviction that the check was not gratuitous and,
consequently, that the trial court did not abuse its discretion Awith
regard to its denial of [Danielle=s]
separate property claim based on the $50,000 check.@  Id. at *4B5.  As mentioned above, however, at the rehearing
after remand, Mr. Lang testified that the entire $101,000 was a gift to
Danielle.  He was unwavering in his
testimony regarding the $101,000 gift despite opposing counsel=s
questions about the promissory note that Danielle signed in 2002.  Moreover, unlike at the first final hearing,
Mr. Lang additionally testified that he filed a gift tax return with the
Internal Revenue Service in 2002 in the amount of $101,000. Mr. Lang listed Danielle
as the donee.  The trial court took
judicial notice that Danielle filed her divorce petition in 2004, after Mr.
Lang filed the gift tax return.

Jerry argues that Danielle failed to meet her
burden of proving her separate property interest in the ranch property because
the testimony of Danielle and the Langs is uncorroborated.  The testimony of Danielle and the Langs is
not uncorroborated.  Danielle=s
exhibit four admitted at the first final hearing is a copy of the $50,000 check
written to the ranch property=s
original owner on August 8, 2000.  The
ranch property=s name and Agift to
Danielle@ are
written in the memo portion of the check. 
And the April 19, 2004 document in which the Langs gifted to Danielle
$51,097.24, Danielle=s exhibit six at the first final
hearing, states that the Langs Aalso
gifted $50,000 to Danielle@ on
August 8, 2000.








Considering the evidence in the first final
hearing, which included both Danielle=s and
Mrs. Lang=s testimony that the $50,000
check was a gift, and the evidence at the hearing after remand, including Mr.
Lang=s gift
tax return and his unequivocal testimony that he intended to make a gift to
Danielle of $50,000 in August 2000, we hold that the trial court could now have
reasonably formed a firm belief or conviction that Danielle acquired a separate
property interest in the ranch property in the amount of $101,097.24.  See Hall, 168 S.W.3d at 170; Roberts,
999 S.W.2d at 432.  Accordingly, the
trial court did not abuse its discretion by finding that Danielle had a
$101,097.24 separate property interest in the ranch property.  We overrule this part of Jerry=s first
issue.

2.      Pflamenco the Horse

Jerry additionally argues that the trial court
mischaracterized Pflamenco as Danielle=s
separate property.  He contends that
Pflamenco is community property because the horse was born during the marriage.








Offspring born to cattle during marriage are
community property.  Gutierrez v.
Gutierrez, 791 S.W.2d 659, 664B65 (Tex.
App.CSan
Antonio 1990, no writ); Blum v. Light, 81 Tex. 414, 16 S.W. 1090 (1891);
see also Alsenz v. Alsenz, 101 S.W.3d 648, 653 (Tex. App.CHouston
[1st Dist.] 2003, pet. denied) (reasoning that income produced from separate
property is generally considered community property, regardless of the nature
of the separate property generating income, including stock, shares in a
corporation, livestock, or other assets).  This is so even if the offsprings= parents
are separate property.  Gutierrez,
791 S.W.2d at 664B65.  Offspring from separate property horses born
during marriage have likewise been held to be community property.  See Avery v. Popper, 92 Tex. 337, 48
S.W. 572, 573 (1898); Bateman v. Bateman, 25 Tex. 270, at *1 (1860) (AThe wife
had separate property consisting in part of cattle and horses.  The decree of partition gives to her the
increase, during the marriage, of the said cattle and horses as part of her
separate estate.  In this there was error
as it has been determined by this court.@).

Danielle opined during her testimony that
Pflamenco was her separate property, but she agreed that Pflamenco was born
during the marriage.  Because Pflamenco
was born during the marriage, the horse is community property, not separate
property.  See Avery, 48 S.W. at
573; Bateman, 25 Tex. at *1.

Although the trial court characterized Pflamenco
as Danielle=s separate property, mere
mischaracterization of community property as separate property does not require
reversal.  Boyd, 131 S.W.3d at
617; see also Vickery v. Vickery, 999 S.W.2d 342, 370 (Tex. 1999).  If the mischaracterization has only a de
minimus effect on the trial court=s
division of the community estate, then the trial court did not abuse its
discretion.  Boyd, 131 S.W.3d at
617.








Jerry contends that Pflamenco is worth $2,000,
but this figure is found in Danielle=s
inventory and appraisement, which she filed but did not enter into evidence at
either the first or second final hearings.[3]  Because Danielle did not enter her inventory
and appraisement into evidence, we cannot rely on the value set forth therein
as evidence of Pflamenco=s value.  See Barnard v. Barnard, 133 S.W.3d
782, 789 (Tex. App.CFort Worth 2004, pet. denied)
(holding that unless a party=s
inventory and appraisal has been admitted into evidence, it may not be
considered as evidence of a property=s
characterization of value); see also In re C.A.N.M., No. 02-04-00200-CV,
2005 WL 1356443, at *3 (Tex. App.CFort
Worth Jun. 9, 2005, no pet.) (mem. op.) (stating that a court may not take
judicial notice of the truth of matters in a filed document unless the document
has been admitted into evidence). 
Neither Danielle nor Jerry produced any evidence of Pflamenco=s
value.  Consequently, the record does not
demonstrate that the trial court=s
mischaracterization of Pflamenco as Danielle=s
separate property had more than a de minimus effect on the trial court=s
division of the community estate.  See
Boyd, 131 S.W.3d at 617. 
Accordingly, we overrule the remainder of Jerry=s first
issue.








C.     Mischaracterization of Separate Property

In his second issue, Jerry argues that the trial
court erred by mischaracterizing some of his separate propertyCa table
saw, a table saw stand, a western saddle, and a cutting torchCas
community property.  He contends that
these items were listed as his separate property in the trial court=s 2006
findings of fact, that they are not listed as his separate property in the
trial court=s 2007 findings of fact, and
that they Aare still in Danielle=s
possession and as such would become her property as she is awarded all of the
items in her possession under the@ divorce
decree.  We disagree.








The trial court=s 2006
findings of fact contained a detailed ACharacterization
and Valuation of the Parties[>] Assets
and Debts@ that set forth the value and a
description of Jerry=s and Danielle=s
community and separate property assets. 
It lists the table saw, table saw stand, western saddle, and cutting
torch as Jerry=s separate property.  After the first appeal and remand, the trial
court conducted another final hearing on the property division, signed the
final decree of divorce, and entered new findings of fact and conclusions of
law.  Unlike the 2006 findings of fact,
the 2007 findings do not specifically list the table saw, table saw stand,
western saddle, and cutting torch as Jerry=s
separate property.  This, however, does
not mean that the trial court mischaracterized the items as community property,
including them in its division of the community estate.

The divorce decree awards Jerry as his separate
property all household furniture, furnishings, fixtures, goods, appliances, and
equipment in his possession and likewise awards Danielle as her separate
property all household furniture, furnishings, fixtures, goods, appliances, and
equipment in her possession.  Although
Jerry contends that the trial court unconstitutionally divested him of the
table saw, table saw stand, western saddle, and cutting torch because the items
are in Danielle=s possession, there is nothing
in the record to show that the items are in Danielle=s
possession.  See generally In re
A.W.P., 200 S.W.3d 242, 244 (Tex. App.CDallas
2006, no pet.) (stating that statements in a brief that are not supported by
the record will not be considered on appeal); see also Tex. R. App. P.
38.1(h) (requiring appropriate citations to the record).  Without any evidence otherwise, the items
could have been awarded to Jerry as his separate property under the provision
in the decree awarding Jerry the property in his possession.  Consequently, Jerry has not demonstrated that
the trial court erroneously mischaracterized his separate property as community
property.  We overrule Jerry=s second
issue.








D.     Just and Right Division

In his fourth issue, Jerry generally argues that
the trial court arbitrarily and unreasonably disproportionately divided the
community estate.  Challenging the trial
court=s
finding of Danielle=s separate property interest in
the ranch property, he seems to contend that the trial court abused its
discretion in dividing the community estate because the evidence is factually
insufficient to support the division.

An assertion that the evidence is factually
insufficient to support a fact finding means that the evidence supporting the
finding is so weak or the evidence to the contrary is so overwhelming that the
answer should be set aside and a new trial ordered.  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  To the extent that Jerry
had the burden of proof on the matter, we must consider and weigh all of the
evidence and set aside the finding only if the evidence is so weak or the
finding is so contrary to the great weight and preponderance of the evidence as
to be clearly wrong and unjust.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); In re King=s Estate, 150
Tex. 662, 244 S.W.2d 660, 661 (1951).








As stated above, an insufficiency issue is not an
independent ground of error but a relevant factor in our assessment of whether
the trial judge abused his discretion.  Boyd,
131 S.W.3d at 611.  In making its just
and right division of the community property, the trial court may also consider
such factors as the spouses=
capacities and abilities, including earning capacity; business opportunities;
education; relative physical conditions; relative financial condition and
obligations; disparity of ages; size of separate estates; and the nature of the
community property.  Murff, 615
S.W.2d at 699.  The complaining party has
the burden of proving from the record that the division was so unjust that the
trial court abused its discretion.  Todd
v. Todd, 173 S.W.3d 126, 129 (Tex. App.CFort
Worth 2005, pet. denied).

The evidence demonstrates that Jerry and Danielle
married in 1996.  Danielle=s and
Jerry=s
testimony consists in relevant part as follows:

$The ranch property, which
is valued at $152,000, consists of just under twelve acres and includes a barn,
an efficiency apartment, and a few horse stalls.

 

$Danielle has a separate
property interest in the ranch property in the amount of $101,000.

 

$Jerry and Danielle had a
joint checking account, but the balance at the time of the first trial was $0.

 

$Jerry and Danielle
purchased a 1994 F350 truck during the marriage that has a value of $5,700 and
is in Jerry=s possession.

 

$They also purchased a
John Deer Tractor during the marriage. $10,000 remains due, and Danielle is in
possession of it.

 

$Jerry owns a Jeep as his
separate property.

 








$Danielle has two
401-Ks:  one valued at $20,116.88 and
another valued at $2,417.25.  Danielle
owes approximately $13,000 in loans taken against the 401-K with a greater
value.

 

$Jerry and Danielle are
owed $75,000 from Greg Morris.

 

$Furniture in the
apartment is valued at approximately $450.

 

$Jerry has in his
possession some china, a small refrigerator, a microwave, and a few older
computers.

 

$Danielle has two
lithograph fox prints, various horse equipment, and a handgun.

 

$Jerry has horse equipment
and other guns.

 

$Danielle has four
community horses in her possession worth $4,000, $15,000, $800, and
$8,000.   Jerry has a horse in Florida
and a one-half interest in a filly. 
Danielle said Jerry can have the two cows that they own.

 

$Jerry has a pending
worker=s compensation claim
worth up to $200,000, according to Danielle at the first hearing.  According to Jerry at the second hearing, he
recovered approximately $4,200 under the claim.

 

$Danielle has credit cards
in her name with balances totaling $20,800, $15,000, $11,000, $500, $5,000, and
$4,000.

 

There was little, if any, testimony regarding the parties=
respective earning capacities, business opportunities, education, physical
conditions, and financial conditions and obligations.  The testimony instead focused primarily on
property and values.








After accounting for Danielle=s
$101,097.24 separate property interest in the ranch property, the trial court
evenly divided between Jerry and Danielle the remaining community equity in the
ranch property of $18,401.50.  The trial
court awarded Jerry the property in his possession and awarded Danielle the
property in her possession.  Danielle is
responsible for the debts in her name, and Jerry is responsible for the debts
in his name.  The trial court awarded
Jerry the Jeep as his separate property. 
Attached to the findings of fact and conclusions of law is an exhibit with
a table setting forth the community assets and corresponding values.  Jerry=s total
assets equal $69,413, and Danielle=s total
assets equal $60,000.

Under the appropriate standard of review, we hold
that the evidence is factually sufficient to support the trial court=s
community division.  See Dow Chem. Co.,
46 S.W.3d at 242; Garza, 395 S.W.2d at 823.  Considering this factor and others, we cannot
say that Jerry has met his burden of proving that the division was so unjust
that the trial court abused its discretion. 
See Todd, 173 S.W.3d at 129; Boyd, 131 S.W.3d at 611.  We overrule Jerry=s fourth
issue.

IV.  VALUATIONS

In his third issue, Jerry asserts numerous
arguments challenging the trial court=s
property valuations.








Errors on the valuation of property do not
require reversal unless, because of such errors, the division made by the trial
court is manifestly unjust.  Von Hohn
v. Von Hohn, 260 S.W.3d 631, 641 (Tex. App.CTyler
2008, no pet.).

The trial court granted the divorce on May 12,
2005, but the 2007 findings erroneously state that the divorce was rendered in
open court on March 12, 2005.  This is an
immaterial typographical error.  The
decree correctly states that the marriage was dissolved effective May 12, 2005.

Jerry sets forth Acorrected
valuation@ tables that make a number of
inferences that are inconsistent with our holdings above, including that Danielle
has a separate property interest in the ranch property in the amount of
$110,297.99.  Jerry additionally
complains that the 2007 findings do not contain values assigned to particular
items of property that the 2006 findings had assigned and do not list values
for the community debt and respective separate properties, but we fail to see
how this renders the trial court=s
property division manifestly unjust.  See
Von Hohn, 260 S.W.3d at 641.








As mentioned above, the trial court attached to
the findings of fact and conclusions of law an exhibit with a table setting
forth the community assets and corresponding values.  The evidence submitted at the first and second
final hearings supports the trial court=s
valuation findings.  We hold that the
trial court did not err in its valuation of the marital estates.  We overrule Jerry=s third
issue.

V.  CONCLUSION

Having overruled Jerry=s four
issues, we affirm the trial court=s
judgment.

 

 

PER CURIAM

PANEL:  HOLMAN, GARDNER, and
WALKER, JJ.

DELIVERED:  December 11, 2008











[1]See Tex. R. App. P. 47.4.





[2]We construe his argument
as specifically challenging the legal sufficiency of the evidence to support
the trial court=s separate property
determination.





[3]Danielle instead entered
into evidence at the first hearing a document entitled ABreakdown of Assets and
Liabilities,@ a summary of her and
Jerry=s assets and
liabilities.  This exhibit does not list
a particular value for Pflamenco.  Jerry=s inventory and
appraisement was not admitted into evidence at the first final hearing either.