Linda S. BOYD, Appellant,

v.

David A. BOYD, Appellee.

No. 2–03–026–CV.

Court of Appeals of Texas,
Fort Worth.

March 11, 2004.

Law Offices of J. Steven King & Heather L. King, Fort Worth, TX, for Appellant.

Shannon, Gracey, Ratliff & Miller, L.L.P., and J. Christopher Nickelson, Fort Worth, TX, for Appellee.

PANEL A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

The primary issue we address in this appeal is whether uncontroverted testimony by a spouse that he used separate property to benefit the community estate constitutes clear and convincing evidence rebutting the community property presumption and supporting a claim for economic contribution. We hold that, based on the entire record in this case, the evidence presented is not such that the factfinder could reasonably have formed a firm belief or conviction about the truth of the allegations sought to be established sufficient to overcome the community property presumption. Accordingly, although we affirm the parties' divorce, we sustain Appellant Linda Boyd's first and second issues, reverse the portion of the trial court's judgment dividing the parties' property, and remand this cause to the trial court for a just and right division of the community property.

### II. FACTUAL AND PROCEDURAL BACKGROUND

David and Linda Boyd were married on February 14, 1989. Thirteen years later, after a period of separation, Linda filed for divorce alleging irreconcilable differences between the parties.[1] Thereafter, the trial

---

1. In response to Linda's Original Petition for Divorce, David filed an answer denying all of

court entered temporary orders granting Linda possession of the community residence during the pendency of the divorce, ordering David to pay Linda $2,000 per month to account for spousal maintenance and to pay the monthly mortgage on the community residence, and instructing the parties to divide the proceeds of a joint money market account.

On July 19, 2002, the trial court notified the parties' attorneys of record that the final hearing was set for October 28, 2002. Less than one month later, Linda's attorney filed a motion to withdraw[2] because Linda had repeatedly failed to contact him as requested. Although the motion did not contain any reference to the date of the final hearing, the cover letter accompanying the motion clearly indicated the date. Copies of the motion and the letter were sent to Linda's residence. The trial court subsequently granted the motion to withdraw.

On October 28, 2002, David's attorney telephoned Linda to notify her that she would need to appear in court the following day. On October 29, 2002, the court called the case to trial and both parties announced ready. Thereafter, Linda informed the court that she was proceeding pro se and agreed to allow David to proceed first on his counter-petition for divorce.

During David's case-in-chief, he introduced seven exhibits into evidence without any objection from Linda. The exhibits essentially provided summaries regarding the nature and classification of the property in dispute, including a list of assets that David claimed were Linda's separate property, a list of assets that David claimed were his separate property, a list of assets

that David requested the court award to Linda, David's First Amended Inventory and Appraisement that identified the parties' assets and listed David's claims regarding the character and value of each asset, a list of assets that David requested the court award to him, a summary of the proposed division of the parties' community property, and a summary of David's claim for economic contribution. David then briefly testified regarding the nature of various property contained on each list, classifying the property pursuant to his exhibits and requesting that the trial court divide the community estate accordingly. However, during his case, David presented no other documentary evidence or testimony to substantiate his classification of the items in the community estate.

After David presented his case, the court inquired as to whether Linda had any questions for David. Although she indicated that she did have questions for David, she responded that she was going to forego them. During Linda's case-in-chief, she attempted to present evidence regarding an appraisal of the community residence, but David objected because Linda had failed to respond to any of his discovery requests. Thereafter, the trial court sustained David's objection, and Linda rested her case. At the close of the hearing, the trial court granted the parties' divorce and divided the community estate in accordance with David's exhibits. No findings of fact or conclusions of law were requested or filed.

On October 31, 2002, two days after the trial court signed the final decree of divorce, Linda retained counsel and filed a motion for new trial. In her motion, Linda

Linda's claims and counter-petitioning for divorce.

2. Linda agreed to her attorney's withdrawal as indicated by a notation in the motion reading "AGREED" and followed by her signature.

alleged that at the time of the trial, she was unaware that the hearing was a final trial setting and that she did not have the mental capacity to conduct herself competently because she was under the influence of psychiatric drugs. She also complained that the trial court improperly excluded evidence and she challenged the evidence to support the trial court's division of the parties' estate. On January 9, 2003, after a hearing on the motion, the trial court denied Linda's request for a new trial.

Linda perfected this appeal from the trial court's final decree of divorce dissolving her marriage to David and dividing the community estate. In five issues, Linda contends that the trial court erred by granting David's claim for economic contribution, by considering David's claim for economic contribution as a factor in valuing the community estate, by mischaracterizing certain marital assets, by improperly dividing the community estate, and by denying her motion for new trial.

## III. ECONOMIC CONTRIBUTION

In her first two issues, Linda contends that the trial court erred by granting David's claim for economic contribution and by considering David's claim for economic contribution as a factor in valuing the community estate. Specifically, Linda contends that the trial court abused its discretion with regard to David's claim for economic contribution because David failed to rebut by clear and convincing evidence the presumption that the property he utilized to make an economic contribution to the community estate was community property. Thus, she complains that the evidence is legally and factually insufficient to support David's claim for economic contribution. David maintains, however, that the evidence is sufficient to support the trial court's implied finding that he overcame the community property pre-

sumption by clear and convincing evidence. Consequently, he contends that the trial court properly granted his claim for economic contribution because the evidence established the separate character of the funds used to support his claim.

### A. Standard of Review

A trial court is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties. TEX. FAM.CODE ANN. § 7.001 (Vernon 1998); *Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex.App.-Fort Worth 2003, no pet.) (op. on reh'g). Trial courts are afforded wide discretion in dividing marital property upon divorce; therefore, a trial court's property division may not be disturbed on appeal unless the complaining party demonstrates from evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex.1985); *McClary v. Thompson*, 65 S.W.3d 829, 833 (Tex.App.-Fort Worth 2002, pet. denied). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *McClary*, 65 S.W.3d at 833. We must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion in dividing marital property. *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex.App.-Fort Worth 1999, pet. denied) (op. on reh'g). Accordingly, we will reverse the cause only if the record demonstrates that the trial court clearly abused its discretion, and the error materially affected the just and right division of the community estate. *Jacobs*, 687 S.W.2d at 732–33.

In a non-jury trial, when no findings of fact or conclusions of law are filed or requested, we must presume that the trial court made all the necessary findings to support its judgment. *Pharo v. Chambers County,* 922 S.W.2d 945, 948 (Tex. 1996); *Byrnes v. Byrnes,* 19 S.W.3d 556, 561 (Tex.App.-Fort Worth 2000, no pet.). Consequently, if the trial court's implied findings are supported by the evidence, we must uphold its judgment on any theory of law applicable to the case. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990).

When a reporter's record is brought forward on appeal, the trial court's implied findings may be challenged for legal and factual sufficiency the same as jury findings or a trial court's findings of fact. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). However, in family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standard of review; thus, legal and factual insufficiency are not independent reversible grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Zeptner,* 111 S.W.3d at 734 (citing *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991)). Accordingly, to determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two-pronged inquiry: (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion? *In re T.D.C.,* 91 S.W.3d 865, 872 (Tex.App.-Fort Worth 2002, pet. denied) (op. on reh'g); *Evans v. Evans,* 14 S.W.3d 343, 346 (Tex. App.-Houston [14th Dist.] 2000, no pet.); *Lindsey v. Lindsey,* 965 S.W.2d 589, 592 (Tex.App.-El Paso 1998, no pet.). The applicable sufficiency review comes into play with regard to the first question. *T.D.C.,*

91 S.W.3d at 872. We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable. *Lindsey,* 965 S.W.2d at 592.

When the burden of proof at trial is by clear and convincing evidence, we apply a higher standard of legal and factual sufficiency review. *In re J.F.C.,* 96 S.W.3d 256, 265–66 (Tex.2002); *In re C.H.,* 89 S.W.3d 17, 26 (Tex.2002). Clear and convincing evidence is defined as that "measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE ANN. § 101.007 (Vernon 2002); *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 31 (Tex.1994). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980); *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979); *In re D.T.,* 34 S.W.3d 625, 630 (Tex.App.-Fort Worth 2000, pet. denied) (op. on reh'g). While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Addington,* 588 S.W.2d at 570. Therefore, in reviewing the evidence for factual sufficiency, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a fact finder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *C.H.,* 89 S.W.3d at 25.

**B. Community Property Presumption**

■ Under Texas law, property possessed by either spouse during or on dissolution of the marriage is presumed to be community property, absent clear and convincing evidence to the contrary. Tex. Fam.Code Ann. § 3.003 (Vernon 1998).[3] The characterization of property as either community or separate is determined by the inception of title to the property. *Smith v. Smith*, 22 S.W.3d 140, 145 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (op. on reh'g). Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested. *Id.* The major consideration in determining the characterization of property as community or separate is the intention of spouses shown by the circumstances surrounding the inception of title. *Scott v. Estate of Scott*, 973 S.W.2d 694, 695 (Tex.App.-El Paso 1998, no pet.).

[16, 17] In order to overcome the community presumption, the burden is on the spouse claiming certain property as separate to trace and clearly identify the property claimed to be separate. *See Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex.1987) (citing *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex.1965)). The burden of tracing is a difficult, but not impossible, burden to sustain. *Latham v. Allison*, 560 S.W.2d 481, 484 (Tex.Civ.App.-Fort Worth 1977, writ ref'd n.r.e.). Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex.App.-Austin 2002, pet. denied).

■ The issue of whether the property is separate or community property is determined by the facts that, according to rules of law, give character to the property. *Robles v. Robles*, 965 S.W.2d 605, 615 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (op. on reh'g). Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character. *Cockerham v. Cockerham*, 527 S.W.2d 162, 168 (Tex.1975). However, if the evidence shows that separate and community property have been so commingled as to defy resegregation and identification, the community presumption prevails. *Hanau*, 730 S.W.2d at 667.

■ When tracing separate property, it is not enough to show that separate funds could have been the source of a subsequent deposit of funds. *Latham*, 560 S.W.2d at 485. Moreover, as a general rule, mere testimony that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption. *Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (op. on reh'g); *Bahr v. Kohr*, 980 S.W.2d 723, 728 (Tex.App.-San Antonio 1998, no pet.); *McElwee v. McElwee*, 911 S.W.2d 182, 188 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Any doubt as to the character of property should be resolved in favor of the community estate. *Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. App.-Fort Worth 1983, writ ref'd n.r.e.).

## C. Error Analysis

■ When separate property is used to enhance the value of the community

---

3. Section 3.003 of the family code provides:
    (a) Property possessed by either spouse during or on dissolution of marriage is presumed to be community property.

    (b) The degree of proof necessary to establish that property is separate property is clear and convincing evidence.
    Tex. Fam.Code Ann. § 3.003.

estate, including the reduction of community debt, the spouse whose separate property was used has an equitable right of reimbursement. *In re Marriage of Royal,* 107 S.W.3d 846, 850 (Tex.App.-Amarillo 2003, no pet.) (citing TEX. FAM.CODE ANN. § 3.403 (Vernon Supp.2004)). Accordingly, the Texas Family Code provides that "[a] marital estate that makes an economic contribution to property owned by another marital estate has a claim for economic contribution with respect to the benefitted estate." TEX. FAM.CODE ANN. § 3.403(a).

■ When a separate estate is the claimant, the spouse seeking economic contribution has the burden to prove, by clear and convincing evidence, that the funds expended to reduce the community debt were separate funds. *Id.* § 3.003(b). Moreover, a spouse seeking economic contribution must bring forth sufficient evidence for the factfinder to determine the enhancement value to the benefitted estate. *See Langston v. Langston,* 82 S.W.3d 686, 689 (Tex.App.-Eastland 2002, no pet.). According to the family code, the amount of a claim for economic contribution is derived by multiplying the equity in the benefitted property on the date of the divorce by a fraction. TEX FAM.CODE ANN. § 3.403(b). The fraction's numerator is the amount of the economic contribution by the contributing estate and its denominator is equal to the sum of that same economic contribution, the equity in the benefitted property on the date of the marriage, and any economic contribution to the benefitted property by the benefitted estate during the marriage. *Id.*

■ At the final hearing, David presented a claim for economic contribution pursuant to Subchapter E of the Texas Family Code. *Id.* §§ 3.401–.410. David

testified that after he and Linda were married, they obtained a mortgage of approximately $350,000 in order to build a residence in Parker County.[4] David then testified that, based upon the advice of his accountant, he made an economic contribution to the community estate by paying down the mortgage on the Parker County residence using $200,000 he had collected from the sale of separate assets—a number of cars and a Colleyville residence—awarded to him as part of a prior divorce settlement. He explained that he had sold the cars in order to pay off the remainder of the mortgage on the Colleyville residence. He then maintained that he sold the Colleyville residence and used the proceeds from that sale to reduce the mortgage on the Parker County residence.

David testified that, according to a recent appraisal, the Parker County residence was worth $450,000 at the time of trial. He also explained that the principal amount of debt on the day of divorce was $135,000, and therefore, he maintained that the actual net equity in the home was $315,000. He then explained that the total principal paid on the house as of the date of trial was $215,000, consisting of $200,000 from David's separate estate and $15,000 from the community estate. Based on the proportion of payments made by David's separate estate and the community estate, David estimated that his separate estate contributed $294,456.52 of the net equity in the residence, leaving the community equity in the residence at $20,543.48. Thereafter, David requested that the trial court grant his claim for economic contribution in the amount of $294,456.52 and award the residence to him along with the $20,543.48 that he maintained was the community equity in the residence.

---

4. During his testimony, David stated that "the interim loan on the house in Parker County was 350, plus or minus—I can't remember the exact number."

Linda contends that David's uncorroborated testimony is legally and factually insufficient to rebut the community property presumption by clear and convincing evidence and to prove the separate character of the property establishing David's claim for economic contribution. David maintains, however, that based on this court's decision in *Newland v. Newland,* the uncorroborated testimony of a spouse, when not contradicted, is sufficient to prove by clear and convincing evidence that the property at issue is that spouse's separate property. 529 S.W.2d 105, 107–08 (Tex.Civ.App.-Fort Worth 1975, writ dism'd).

In *Newland,* this court was called upon to determine whether a husband had presented clear and convincing evidence to establish that four parcels of land were purchased with separate funds, thereby establishing the separate character of the land. *Id.* at 107–09. During the couple's marriage, the husband held two accounts in the same bank—one for the deposit of community funds and one for business transactions relative to the property constituting his separate estate and exchanges thereof. *Id.* at 108. However, when funds in one account were low, the husband would use funds from the other account as a short-term loan. *Id.* at 109. According to the husband, after each loan, "there was repayment so that the two accounts were restored to the condition which would have obtained had there not been necessity for any transfer." *Id.*

The wife insisted that the husband failed to present sufficient evidence to establish the land's separate character because funds had been so commingled between his separate account and the community account as to defy resegregation, especially in light of the various exchanges in the form of the property at issue over the years. *Id.* at 107–08. The wife also con-

tended that, because of minor gaps in tracing and corroboration, the husband could not provide clear and convincing evidence of the land's separate character. *Id.*

After reviewing the evidence, the court found that upon the rare instances of commingling the husband had demonstrated the ability to compute the balances of the separate and community accounts for purposes of resegregation. *Id.* at 109. Moreover, the court recognized that, for most of the twenty-year period involved, the husband's "testimony was corroborated by bank records" and "documentary evidence." *Id.* at 107, 109. Consequently, the *Newland* court found that even with the minor gaps in tracing and corroboration the husband had presented clear and convincing evidence to establish the separate character of the account, and in turn, the separate character of the land in dispute. *Id.* at 108–09. Accordingly, because the *Newland* court was presented with bank records and documentary evidence corroborating the majority of the husband's testimony, it does not support the proposition that uncorroborated, uncontradicted testimony of a spouse is per se sufficient to clearly and convincingly prove the separate character of property.

David also cites this court's decision in *Faram v. Gervitz–Faram* to support his contention that a spouse's uncorroborated, uncontroverted testimony constitutes clear and convincing evidence rebutting the community property presumption. 895 S.W.2d 839, 843 (Tex.App.-Fort Worth 1995, no writ). In *Faram,* although the records tracing and identifying the property at issue were incomplete, sufficient documentary evidence existed to corroborate the spouse's testimony that the disputed property was separate property. *Id.* at 843–44.

In the instant case, David, as the party claiming that his separate estate was enti-

tled to economic contribution, had the initial burden to clearly trace and identify the separate nature of funds expended to reduce the community debt. *See Hanau,* 730 S.W.2d at 667; *Ganesan,* 96 S.W.3d at 354; *see also* 33 JUDGE DON KOONS, TEXAS PRACTICE SERIES: HANDBOOK OF TEXAS FAMILY LAW § 9.10 (2004 ed.). During his testimony, David presented no documentary evidence to establish the separate origin of the funds that he utilized to pay down the Parker County mortgage. Specifically, he did not produce financial records, deed or title records, closing statements, or other evidence to trace and identify the funds creating his claim for contribution from the community estate back to assets that were separate in character. For example, there is no documentary evidence in the record demonstrating the exact dates of sale or the proceeds received from either the sale of the cars or the Colleyville residence that David claimed were separate in character. Moreover, while David believed that the Colleyville residence sold for approximately $260,000 and that he used $200,000 of the proceeds of such to pay down the Parker County mortgage, no documentary evidence exits in the record showing that the Parker County mortgage was actually funded with the proceeds of sale from the Colleyville residence.

David did not provide supporting documentation to prove the fair market value, principal amount of debt, or equity of the Parker County residence as of the date of marriage or divorce. *See* TEX. FAM.CODE ANN. §§ 3.401(2), 3.403(b). For instance, although he testified that the Parker County residence was valued at $350,000 as of the date of closing, no mortgage

documents, closing statements, or appraisal reports are in the record before us. David indicated that an appraiser had valued the Parker County residence at $450,000 as of the date of the divorce, but no appraisal report substantiating his valuation was introduced into evidence.

David provided no testimony, other than his own, to corroborate or substantiate the transactional trail leading up to his claim for economic contribution.[5] In essence, the only evidence that David provided was his own testimony, claiming that he had owned a Colleyville residence and some cars prior to his marriage to Linda, out of which he had used proceeds generated by the sale of such property to pay $200,000 on the mortgage for the Parker County residence, and an "economic contribution summary" exhibit stating these same facts.

At trial, David testified that he was unable to access the closing papers on the sale of the Colleyville residence because they were in Linda's possession at the Parker County residence.[6] However, he did not address the absence of other supporting documentation establishing the separate nature of the cars and the Colleyville residence and, in turn, the funds used to support his claim for economic contribution.

David's testimony about the property he sold to make an economic contribution to the Parker County residence and the economic contribution summary admitted into evidence are similar to the type of evidence other courts have found insufficient to constitute clear and convincing evidence rebutting the community presumption and establishing characterization of property as separate. *See Ganesan,* 96 S.W.3d at

**5.** David mentioned that his accountant had advised him to use the proceeds from the sale of his Colleyville residence to pay down the Parker County mortgage, but the accountant did not testify.

**6.** Deed and title documents are public records. TEX. PROP.CODE ANN. § 13.002 (Vernon 2004); TEX. TRANSP. CODE ANN. § 201.501 (Vernon 1999).

354 (holding husband's testimony failed to establish certain accounts were separate property because neither his testimony nor the exhibits offered "provid[ed] account numbers, statements of accounts, dates of transfers, amounts transferred in or out, sources of funds or any semblance of asset tracing"); *Osorno v. Osorno*, 76 S.W.3d 509, 512 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (holding husband's testimony insufficient to overcome the community presumption in the absence of deposit slips or bank records tracing the source of the funds); *Bahr*, 980 S.W.2d at 728–29 (holding wife's testimony failed to establish property was her separate property because documentary evidence offered to support claim that property was purchased with monies from a separate property account did not show date the account was opened, the running balance of the account, or identify the party receiving wire transfer for alleged purchase of property at issue); *Robles*, 965 S.W.2d at 616 (holding husband's testimony insufficient to overcome the community presumption when husband only testified as to the separate nature of the property in dispute but provided no supporting documentary evidence to trace the funds used to purchase the property); *McElwee*, 911 S.W.2d at 188 (reversing trial court's characterization of certain assets as husband's separate property). In fact, Judge Koons, in the "Burden to Prove Separate Property" section of his family law treatise presents a scenario very similar to the facts here:

> *Example:* Mary testifies that she owned a car before marriage and that, after the marriage, she sold the car and purchased another car she now drives. She asks the judge to award her present car to her as separate property since property acquired with separate property is separate property. This testimony requires the court to infer that she used the money from the sale of her separate

property car to purchase her present car. It is doubtful the court would find this to be clear and convincing evidence. It is likely Mary would need to show deposit slips and checks to show clearly the source of funds used to purchase the second car, in order to prevail.

33 JUDGE DON KOONS, TEXAS PRACTICE SERIES: HANDBOOK OF TEXAS FAMILY LAW § 9.10.

David did not present specific tracing testimony or corroborating testimony or evidence, similar to evidence presented in cases where courts have determined that the separate nature of the property was established by clear and convincing evidence. *Cf. Zagorski*, 116 S.W.3d at 316–17 (holding husband did establish that funds in foreign bank account were his separate property through the inception of title rule by calling three witnesses who testified the account existed before husband's marriage and identified source of funds in account and by producing corroborating documentary evidence concerning the account); *Faram*, 895 S.W.2d at 843 (holding wife did establish that two investment accounts and Treasury bill were her separate property through documents "trac[ing] the source of funds used to purchase the Treasury bill back to a USAA savings account designated in the couple's pre-marital property agreement as Gervitz' separate property" and trac[ing] the two investment accounts "to a pre-marriage point in time"); *Newland*, 529 S.W.2d at 107–09 (holding husband did establish that funds in account were his separate property because for most of the twenty-year period involved, the husband's "testimony was corroborated by bank records" and "documentary evidence"). As a result, the trial court was left to surmise or speculate, based on David's testimony alone, that the proceeds from the sale of David's separate property were the source of funds that created his claim for economic contribu-

tion. *See Latham,* 560 S.W.2d at 485 (stating that conjecture as to the source of funds is insufficient to sustain the burden of tracing); *see also McKinley v. McKinley,* 496 S.W.2d 540, 544 (Tex.1973) (stating that the community presumption prevails if surmise or speculation is required to come to a conclusion about a property's status).

▮ As indicated by the United States Supreme Court, "[t]he function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). By adopting the clear and convincing standard as the requisite degree of proof required to rebut the community presumption, the legislature deliberately imposed a more stringent burden of proof to establish separate ownership of property upon the dissolution of marriage. *See* TEX. FAM.CODE ANN. § 3.003(b); *see also* Bill Vance, *The Clear and Convincing Standard of Review in Texas: A Critique,* 48 BAYLOR L.REV. 391, 409 (1996) (pointing to section 3.003(b) of the Texas Family Code as protecting a right of constitutional dimension by imposing the clear and convincing standard). Our review of the record indicates that David did not discharge his burden to rebut the community presumption by clear and convincing evidence with regard to the funds he claimed were proceeds of his separate property. *Accord Osorno,* 76

S.W.3d at 512; *Robles,* 965 S.W.2d at 616. Accordingly, we hold that the evidence in the record before us is factually insufficient to support David's claim that he contributed separate property to the Parker County residence.[7]

**D. Harm Analysis**

▮ When we are asked to review an alleged characterization error we must determine not only whether the trial court's finding of separate property is supported by clear and convincing evidence, but also whether the characterization error, if established, caused the trial court to abuse its discretion. *See Allen v. Allen,* 704 S.W.2d 600, 603 (Tex.App.-Fort Worth 1986, no writ). Mere mischaracterization of community property as separate, in the estate of the parties alone, does not require reversal. *See Magill v. Magill,* 816 S.W.2d 530, 533 (Tex.App.-Houston [1st Dist.] 1991, writ denied) (citing *Mundy v. Mundy,* 653 S.W.2d 954, 957 (Tex.App.-Dallas 1983, no writ)). If the mischaracterization has only a de minimus effect on the trial court's division of the community estate, then the trial court did not abuse its discretion. *See Robles,* 965 S.W.2d at 621. However, if property is mischaracterized and the mischaracterization is of such magnitude that it affects the just and right division of the community estate, we must remand the entire case to the trial court for a just and right division based upon the correct characterization of the property. *Zeptner,* 111 S.W.3d at 740.

▮ In the instant case, Linda maintains that, due to the trial court's charac-

7. Because sufficiency of the evidence is only a factor in assessing whether the trial court abused its discretion, and because, as demonstrated below in the harm analysis portion of our opinion, the factual insufficiency of the evidence caused the trial court to abuse its discretion in dividing the community estate, we need not address whether any legal insufficiency of the evidence also caused the trial court to abuse its discretion. In other words, Linda is not entitled to any greater relief even if the trial court abused its discretion based on legal insufficiency of the evidence.

**618**

terization of community property as separate, the value of such property was not divided as part of the community estate. Therefore, she contends that the trial court abused its discretion by erroneously considering David's claim for economic contribution as a factor in valuing the community estate because the value of the mischaracterized property would have materially affected the trial court's just and right division.

The record indicates that the trial court relied on David's proposed division of the community estate in dividing the property. In doing so, the trial court included only the $20,543.48 that David claimed was the community equity in the Parker County residence, thus reducing the actual equity in the residence by $294,456.52 based on David's claim for economic contribution. With only $20,543.48 of community equity in the Parker County residence, the trial court's resulting division was approximately 53% to 47% in favor of Linda.[8] However, the trial court did not include the mischaracterized $294,456.52 in the community estate. When the mischaracterized $294,456.52 [9] is included in the community estate and awarded to David, the actual property division is extremely disproportionate in favor of David.

Accordingly, we are persuaded that, due to the trial court's characterization error, the community estate was grossly undervalued, thereby creating far more than a de minimis effect on the trial court's division of the community estate. As a result, we hold that the trial court's division was

so unjust and unfair as to constitute an abuse of discretion. Therefore, we sustain Linda's first and second issues.

## IV. Conclusion

Having sustained Linda's first and second issues, we need not consider her remaining issues. *See* Tex.R.App. P. 47.1. We affirm the parties' divorce, but we reverse and remand this case to the trial court for a just and right division of the community estate.

---

8. The trial court divided the community based on Respondents Exhibit's 3, 5, and 6. From the record, it appears that, based on those exhibits, Linda was awarded approximately $82,695 in community assets and David was awarded approximately $72,647 in community assets.

9. Our holding that $294,456.52 was mischaracterized as David's separate property is based strictly on the record before us. On remand, David may introduce corroborating evidence establishing the separate nature of these funds.