

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-033-CV

JERRY W. WILLIAMS, JR.                                    APPELLANT

V.

DANIELLE MARIE WILLIAMS                                   APPELLEE

------------

### FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  INTRODUCTION

Appellant Jerry W. Williams, Jr. appeals from a divorce decree dissolving his marriage to Appellee Danielle Marie Williams.  In four issues, Jerry argues that the trial court erred by mischaracterizing property, incorrectly valuing the marital estates, and improperly dividing the community estate.  We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The trial court signed a final decree of divorce on January 12, 2006, dissolving Jerry's and Danielle's marriage. The trial court entered findings of fact, which included in part the following findings relevant to the Williams's property at 881 Blackjack Road, referred to as the "ranch property":

[Danielle] and [Jerry] purchased the [ranch property,] on August 7, 1997, and had a note with a final maturity payment due on August 1, 2000.

When the final maturity payment became due in the summer of 2000, [Danielle] and [Jerry] entered into an agreement with [Danielle's] mother Rita Soto Lang and her husband Paul Lang.

The agreement was for Mr. and Mrs. Lang to pay the final maturity payment on the ranch property in August of 2000, and [Danielle] and [Jerry] would then pay Mr. and Mrs. Lang.

The Langs made two payments in August of 2000, one for $50,000.00 on August 8, 2000, and the[n] one for $62,000.00 on August 25, 2000.

[Danielle] and [Jerry] made payments to Mr. And Mrs. Lang.

In 2002, the Langs attempted to have a Promissory Note in the amount of $112,000.00 and secured by the ranch property executed by [Danielle] and [Jerry]. [Danielle] did sign the promissory note on May 6, 2002, however, [Jerry] did not sign.

On April 19, 2004, the Langs executed a document purporting to convey a gift solely to [Danielle] the balance of the property loan of $51,097.24. The same document also purports to acknowledge a gift to [Danielle] on August 8, 2000, for the original $50,000.00 payment made by the Langs.

2

Because the property was originally purchased as community property and the subsequent loan was a debt of both parties[,] the court finds that any forgiveness of debt benefitted the community estate[,] and [Danielle] has no claim for separate property reimbursement from the community estate.

The court finds that [Danielle] does not have a separate property claim in the [ranch property].

The trial court entered conclusions of law, which included in part the following:

Because the ranch property was originally purchased as community property and the subsequent loan by the Langs was a debt of the community estate, the court concludes as a matter of law that any forgiveness of debt by the Langs benefited the community estate and [Danielle] has no claim for separate property reimbursement from the community estate in regards to the ranch property.

Danielle appealed and challenged the trial court's findings of fact and conclusions of law providing that she did not have a separate property claim in the ranch property. *See Williams v. Williams*, No. 02-06-00143-CV, 2007 WL 79698, at *2 (Tex. App.—Fort Worth Jan. 11, 2007, no pet.) (mem. op.). In our memorandum opinion, we reasoned that the trial court did not abuse its discretion with regard to its denial of Danielle's separate property claim based on the $50,000 check that the Langs issued on August 8, 2000. *Id*. at *4–5. However, we reversed the trial court's judgment as to the property division and remanded the case to the trial court to re-divide the parties' community estate because the trial court erred by characterizing the Langs' $51,097.24 gift to

3

Danielle of the remaining balance of the ranch property loan as community property. *Id*. at *5–7.

On remand, the trial court conducted a "Rehearing on Property Issues," in which it took judicial notice of "everything that was admitted in the previous trial." On October 15, 2007, the trial court signed a final decree of divorce, and it later entered findings of fact and conclusions of law. As part of its property division, the trial court awarded Danielle a $101,097.24 separate property interest in the ranch property, finding that she, "by gifts from her mother and stepfather, acquired a $101,097.24 separate property claim against the Ranch Property, donative intent on the part of the Langs having been evidenced over a year before the divorce was even filed." Now Jerry appeals.

### III.  PROPERTY DIVISION

#### A.  Standard of Review

A trial judge is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties. Tex. Fam. Code Ann. § 7.001 (Vernon 2006); *Moroch v. Collins*, 174 S.W.3d 849, 855 (Tex. App.—Dallas 2005, pet. denied). The court has broad discretion in making its just and right division, and absent a clear abuse of discretion, we will not disturb that division. *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981); *Boyd v. Boyd*, 67 S.W.3d 398, 406 (Tex. App.—Fort Worth 2002, no pet.).

4

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Oritz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

In family law cases, however, the traditional sufficiency standard of review overlaps with the abuse of discretion standard of review; therefore, legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.). Accordingly, to determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two-pronged inquiry: (1) did the trial court

have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion?  *Id*.; *Moroch*, 174 S.W.3d at 857.  The applicable sufficiency review comes into play with regard to the first question.  *Boyd*, 131 S.W.3d at 611.  We then determine whether, based on the elicited evidence, the trial court made a reasonable decision.  *Id*.

A party who seeks to assert the separate character of property must prove that character by clear and convincing evidence.  Tex. Fam. Code Ann. § 3.003(b) (Vernon 2006).  Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.  Tex. Civ. Prac. & Rem. Code Ann § 41.001(2) (Vernon 2008); Tex. Fam. Code Ann. § 101.007 (Vernon 2002); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 31 (Tex. 1994).  This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings.  *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979).  While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed.  *Addington*, 588 S.W.2d at 570.

In reviewing the evidence for legal sufficiency, we must determine whether the evidence is such that a factfinder could reasonably form a firm

6

belief or conviction that its finding was true. *Diamond Shamrock Ref. Co., L.P. v. Hall*, 168 S.W.3d 164, 170 (Tex. 2005); *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004).  We must review all the evidence in the light most favorable to the finding.  *Hall*, 168 S.W.3d at 170; *Garza*, 164 S.W.3d at 627.  This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so.  *Hall*, 168 S.W.3d at 170; *Garza*, 164 S.W.3d at 627.  We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Hall*, 168 S.W.3d at 170; *Garza*, 164 S.W.3d at 627.  We must consider, however, undisputed evidence even if it is contrary to the finding.  *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *Hall*, 168 S.W.3d at 170.  That is, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.  *Wilson*, 168 S.W.3d at 827.

## B.    Mischaracterization of Community Property

In his first issue, Jerry challenges the trial court's finding that Danielle has a $101,097.24 separate property interest in the ranch property.  He seems to contend that Danielle failed to meet her burden of proving the separate property

7

character of the ranch property by clear and convincing evidence.[2] Jerry also challenges the characterization of Pflamenco, a horse, as Danielle's separate property.

Property possessed by either spouse at the dissolution of the marriage is presumed to be community property, absent clear and convincing evidence to the contrary. Tex. Fam. Code Ann. § 3.003; *Boyd*, 131 S.W.3d at 612. In order to overcome the community property presumption, the burden is on the spouse claiming certain property as separate to trace and clearly identify the property claimed to be separate. *Boyd*, 131 S.W.3d at 612. Tracing merely involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Id*.

Property acquired by gift during marriage is constitutionally and statutorily defined as separate property. *See* Tex. Const. art. XVI, § 15; Tex. Fam. Code Ann. § 3.001. A gift is a voluntary transfer of property to another made gratuitously and without consideration. *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565, 569 (1961); *Roberts v. Roberts*, 999 S.W.2d 424, 432 (Tex.

---

[2] We construe his argument as specifically challenging the legal sufficiency of the evidence to support the trial court's separate property determination.

App.—El Paso 1999, no pet.). Three elements are required to establish the existence of a gift: (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. *Roberts*, 999 S.W.2d at 432; *Williams*, 2007 WL 79698, at *4. The donor's intent is the principal issue in determining whether a gift has been made. *See Hayes v. Rinehart*, 65 S.W.3d 286, 289 (Tex. App.—Eastland 2001, no pet.). The person claiming that a gift was made must prove the gift by clear and convincing evidence. *Id*. A trial court has no authority to divest a spouse's interest in separate property. *Cameron v. Cameron*, 641 S.W.2d 210, 213 (Tex. 1982).

### 1. Ranch Property

In our first memorandum opinion, we detailed the evidence demonstrating that the Langs' discharge of the $51,097.24 remaining debt was a gift to Danielle and, accordingly, her separate property. *See Williams,* 2007 WL 79698, at *5–6. We stated in part the following:

> [Mrs. Lang] testified that, with regard to the $62,000 check, it was her intention at the time that it would be repaid. On April 19, 2004, the Langs signed a document which stated, "We hereby gift the balance of the property loan ($51,097.24) for [the Ranch Property] to [Danielle]." [Mrs. Lang] testified that she prepared this document. She also testified that her intent was that it be a gift to her daughter and not to [Jerry]. When asked the reason for the gift, [Mrs. Lang] testified that it was because [Danielle] was struggling with other bills and "we just wanted to do it for her sake."

9

The trial court's conclusion of law, that the Langs made a loan that constituted community debt, was correct, because it was a loan made to the parties during marriage. However, because forgiveness of debt can constitute a gift, and because the testimony and the 2004 document demonstrated intent, delivery, and acceptance of this gift, there was legally sufficient evidence that the Langs intended to make a gift to [Danielle] of the forgiveness of the $51,097.24 debt. . . .

Because the discharge of $51,097.24 was a gift to [Danielle], it was her separate property.

*Id*. (citations omitted). At the rehearing after remand, Mr. Lang testified that he intended to make a gift of the entire approximately $101,000 (consisting of the $51,097.24 debt forgiveness and the $50,000 check issued on August 8, 2000) to Danielle. Our opinion in this appeal is unchanged. We hold that the trial court could have reasonably formed a firm belief or conviction that the Langs gifted to Danielle a discharge of the debt on the ranch property in the amount of $51,097.24.

Turning to the August 8, 2000 $50,000 check, we determined in our previous opinion that the trial court could have reasonably formed a firm belief or conviction that the check was not gratuitous and, consequently, that the trial court did not abuse its discretion "with regard to its denial of [Danielle's] separate property claim based on the $50,000 check." *Id*. at *4–5. As mentioned above, however, at the rehearing after remand, Mr. Lang testified that the entire $101,000 was a gift to Danielle. He was unwavering in his

10

testimony regarding the $101,000 gift despite opposing counsel's questions about the promissory note that Danielle signed in 2002. Moreover, unlike at the first final hearing, Mr. Lang additionally testified that he filed a gift tax return with the Internal Revenue Service in 2002 in the amount of $101,000. Mr. Lang listed Danielle as the donee. The trial court took judicial notice that Danielle filed her divorce petition in 2004, after Mr. Lang filed the gift tax return.

Jerry argues that Danielle failed to meet her burden of proving her separate property interest in the ranch property because the testimony of Danielle and the Langs is uncorroborated. The testimony of Danielle and the Langs is not uncorroborated. Danielle's exhibit four admitted at the first final hearing is a copy of the $50,000 check written to the ranch property's original owner on August 8, 2000. The ranch property's name and "gift to Danielle" are written in the memo portion of the check. And the April 19, 2004 document in which the Langs gifted to Danielle $51,097.24, Danielle's exhibit six at the first final hearing, states that the Langs "also gifted $50,000 to Danielle" on August 8, 2000.

Considering the evidence in the first final hearing, which included both Danielle's and Mrs. Lang's testimony that the $50,000 check was a gift, and the evidence at the hearing after remand, including Mr. Lang's gift tax return

11

and his unequivocal testimony that he intended to make a gift to Danielle of $50,000 in August 2000, we hold that the trial court could now have reasonably formed a firm belief or conviction that Danielle acquired a separate property interest in the ranch property in the amount of $101,097.24. *See Hall*, 168 S.W.3d at 170; *Roberts*, 999 S.W.2d at 432. Accordingly, the trial court did not abuse its discretion by finding that Danielle had a $101,097.24 separate property interest in the ranch property. We overrule this part of Jerry's first issue.

### 2. Pflamenco the Horse

Jerry additionally argues that the trial court mischaracterized Pflamenco as Danielle's separate property. He contends that Pflamenco is community property because the horse was born during the marriage.

Offspring born to cattle during marriage are community property. *Gutierrez v. Gutierrez*, 791 S.W.2d 659, 664–65 (Tex. App.—San Antonio 1990, no writ); *Blum v. Light*, 81 Tex. 414, 16 S.W. 1090 (1891); *see also Alsenz v. Alsenz*, 101 S.W.3d 648, 653 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (reasoning that income produced from separate property is generally considered community property, regardless of the nature of the separate property generating income, including stock, shares in a corporation, *livestock*, or other assets). This is so even if the offsprings' parents are

12

separate property. *Gutierrez*, 791 S.W.2d at 664–65. Offspring from separate property horses born during marriage have likewise been held to be community property. *See Avery v. Popper*, 92 Tex. 337, 48 S.W. 572, 573 (1898); *Bateman v. Bateman*, 25 Tex. 270, at *1 (1860) ("The wife had separate property consisting in part of cattle and horses. The decree of partition gives to her the increase, during the marriage, of the said cattle and horses as part of her separate estate. In this there was error as it has been determined by this court.").

Danielle opined during her testimony that Pflamenco was her separate property, but she agreed that Pflamenco was born during the marriage. Because Pflamenco was born during the marriage, the horse is community property, not separate property. *See Avery*, 48 S.W. at 573; *Bateman*, 25 Tex. at *1.

Although the trial court characterized Pflamenco as Danielle's separate property, mere mischaracterization of community property as separate property does not require reversal. *Boyd*, 131 S.W.3d at 617; *see also Vickery v. Vickery*, 999 S.W.2d 342, 370 (Tex. 1999). If the mischaracterization has only a de minimus effect on the trial court's division of the community estate, then the trial court did not abuse its discretion. *Boyd*, 131 S.W.3d at 617.

13

Jerry contends that Pflamenco is worth $2,000, but this figure is found in Danielle's inventory and appraisement, which she filed but did not enter into evidence at either the first or second final hearings.[3] Because Danielle did not enter her inventory and appraisement into evidence, we cannot rely on the value set forth therein as evidence of Pflamenco's value. *See Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied) (holding that unless a party's inventory and appraisal has been admitted into evidence, it may not be considered as evidence of a property's characterization of value); *see also In re C.A.N.M.*, No. 02-04-00200-CV, 2005 WL 1356443, at *3 (Tex. App.—Fort Worth Jun. 9, 2005, no pet.) (mem. op.) (stating that a court may not take judicial notice of the truth of matters in a filed document unless the document has been admitted into evidence). Neither Danielle nor Jerry produced any evidence of Pflamenco's value. Consequently, the record does not demonstrate that the trial court's mischaracterization of Pflamenco as Danielle's separate property had more than a de minimus effect on the trial

---

[3] Danielle instead entered into evidence at the first hearing a document entitled "Breakdown of Assets and Liabilities," a summary of her and Jerry's assets and liabilities. This exhibit does not list a particular value for Pflamenco. Jerry's inventory and appraisement was not admitted into evidence at the first final hearing either.

court's division of the community estate.  *See Boyd*, 131 S.W.3d at 617.

Accordingly, we overrule the remainder of Jerry's first issue.

### C.    Mischaracterization of Separate Property

In his second issue, Jerry argues that the trial court erred by mischaracterizing some of his separate property—a table saw, a table saw stand, a western saddle, and a cutting torch—as community property. He contends that these items were listed as his separate property in the trial court's 2006 findings of fact, that they are not listed as his separate property in the trial court's 2007 findings of fact, and that they "are still in Danielle's possession and as such would become her property as she is awarded all of the items in her possession under the" divorce decree. We disagree.

The trial court's 2006 findings of fact contained a detailed "Characterization and Valuation of the Parties['] Assets and Debts" that set forth the value and a description of Jerry's and Danielle's community and separate property assets. It lists the table saw, table saw stand, western saddle, and cutting torch as Jerry's separate property. After the first appeal and remand, the trial court conducted another final hearing on the property division, signed the final decree of divorce, and entered new findings of fact and conclusions of law. Unlike the 2006 findings of fact, the 2007 findings do not specifically list the table saw, table saw stand, western saddle, and cutting torch as Jerry's separate property. This, however, does not mean that the trial

16

court mischaracterized the items as community property, including them in its division of the community estate.

The divorce decree awards Jerry as his separate property all household furniture, furnishings, fixtures, goods, appliances, and equipment in his possession and likewise awards Danielle as her separate property all household furniture, furnishings, fixtures, goods, appliances, and equipment in her possession. Although Jerry contends that the trial court unconstitutionally divested him of the table saw, table saw stand, western saddle, and cutting torch because the items are in Danielle's possession, there is nothing in the record to show that the items are in Danielle's possession. *See generally In re A.W.P.*, 200 S.W.3d 242, 244 (Tex. App.—Dallas 2006, no pet.) (stating that statements in a brief that are not supported by the record will not be considered on appeal); *see also* Tex. R. App. P. 38.1(h) (requiring appropriate citations to the record). Without any evidence otherwise, the items could have been awarded to Jerry as his separate property under the provision in the decree awarding Jerry the property in his possession. Consequently, Jerry has not demonstrated that the trial court erroneously mischaracterized his separate property as community property. We overrule Jerry's second issue.

17

### D.    Just and Right Division

In his fourth issue, Jerry generally argues that the trial court arbitrarily and unreasonably disproportionately divided the community estate. Challenging the trial court's finding of Danielle's separate property interest in the ranch property, he seems to contend that the trial court abused its discretion in dividing the community estate because the evidence is factually insufficient to support the division.

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). To the extent that Jerry had the burden of proof on the matter, we must consider and weigh all of the evidence and set aside the finding only if the evidence is so weak or the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

As stated above, an insufficiency issue is not an independent ground of error but a relevant factor in our assessment of whether the trial judge abused his discretion. *Boyd*, 131 S.W.3d at 611. In making its just and right division

18

of the community property, the trial court may also consider such factors as the spouses' capacities and abilities, including earning capacity; business opportunities; education; relative physical conditions; relative financial condition and obligations; disparity of ages; size of separate estates; and the nature of the community property. *Murff*, 615 S.W.2d at 699. The complaining party has the burden of proving from the record that the division was so unjust that the trial court abused its discretion. *Todd v. Todd*, 173 S.W.3d 126, 129 (Tex. App.—Fort Worth 2005, pet. denied).

The evidence demonstrates that Jerry and Danielle married in 1996. Danielle's and Jerry's testimony consists in relevant part as follows:

- •The ranch property, which is valued at $152,000, consists of just under twelve acres and includes a barn, an efficiency apartment, and a few horse stalls.

- •Danielle has a separate property interest in the ranch property in the amount of $101,000.

- •Jerry and Danielle had a joint checking account, but the balance at the time of the first trial was $0.

- •Jerry and Danielle purchased a 1994 F350 truck during the marriage that has a value of $5,700 and is in Jerry's possession.

- •They also purchased a John Deer Tractor during the marriage. $10,000 remains due, and Danielle is in possession of it.

- •Jerry owns a Jeep as his separate property.

19

•Danielle has two 401-Ks: one valued at $20,116.88 and another valued at $2,417.25. Danielle owes approximately $13,000 in loans taken against the 401-K with a greater value.

•Jerry and Danielle are owed $75,000 from Greg Morris.

•Furniture in the apartment is valued at approximately $450.

•Jerry has in his possession some china, a small refrigerator, a microwave, and a few older computers.

•Danielle has two lithograph fox prints, various horse equipment, and a handgun.

•Jerry has horse equipment and other guns.

•Danielle has four community horses in her possession worth $4,000, $15,000, $800, and $8,000. Jerry has a horse in Florida and a one-half interest in a filly. Danielle said Jerry can have the two cows that they own.

•Jerry has a pending worker's compensation claim worth up to $200,000, according to Danielle at the first hearing. According to Jerry at the second hearing, he recovered approximately $4,200 under the claim.

•Danielle has credit cards in her name with balances totaling $20,800, $15,000, $11,000, $500, $5,000, and $4,000.

There was little, if any, testimony regarding the parties' respective earning capacities, business opportunities, education, physical conditions, and financial conditions and obligations. The testimony instead focused primarily on property and values.

After accounting for Danielle's $101,097.24 separate property interest in the ranch property, the trial court evenly divided between Jerry and Danielle the remaining community equity in the ranch property of $18,401.50. The trial court awarded Jerry the property in his possession and awarded Danielle the property in her possession. Danielle is responsible for the debts in her name, and Jerry is responsible for the debts in his name. The trial court awarded Jerry the Jeep as his separate property. Attached to the findings of fact and conclusions of law is an exhibit with a table setting forth the community assets and corresponding values. Jerry's total assets equal $69,413, and Danielle's total assets equal $60,000.

Under the appropriate standard of review, we hold that the evidence is factually sufficient to support the trial court's community division. *See Dow Chem. Co.*, 46 S.W.3d at 242; *Garza*, 395 S.W.2d at 823. Considering this factor and others, we cannot say that Jerry has met his burden of proving that the division was so unjust that the trial court abused its discretion. *See Todd*, 173 S.W.3d at 129; *Boyd*, 131 S.W.3d at 611. We overrule Jerry's fourth issue.

## IV. VALUATIONS

In his third issue, Jerry asserts numerous arguments challenging the trial court's property valuations.

Errors on the valuation of property do not require reversal unless, because of such errors, the division made by the trial court is manifestly unjust. *Von Hohn v. Von Hohn*, 260 S.W.3d 631, 641 (Tex. App.—Tyler 2008, no pet.).

The trial court granted the divorce on May 12, 2005, but the 2007 findings erroneously state that the divorce was rendered in open court on March 12, 2005. This is an immaterial typographical error. The decree correctly states that the marriage was dissolved effective May 12, 2005.

Jerry sets forth "corrected valuation" tables that make a number of inferences that are inconsistent with our holdings above, including that Danielle has a separate property interest in the ranch property in the amount of $110,297.99. Jerry additionally complains that the 2007 findings do not contain values assigned to particular items of property that the 2006 findings had assigned and do not list values for the community debt and respective separate properties, but we fail to see how this renders the trial court's property division manifestly unjust. *See Von Hohn*, 260 S.W.3d at 641.

As mentioned above, the trial court attached to the findings of fact and conclusions of law an exhibit with a table setting forth the community assets and corresponding values. The evidence submitted at the first and second final hearings supports the trial court's valuation findings. We hold that the trial

court did not err in its valuation of the marital estates.  We overrule Jerry's third issue.

### V.  CONCLUSION

Having overruled Jerry's four issues, we affirm the trial court's judgment.


PER CURIAM

PANEL:  HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED:  December 11, 2008