

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00260-CV

STEVEN DAHL,

                                                            Appellant

 v.

WARREN DAHL AND TERRI R. DAHL,

                                                            Appellees


From the 220th District Court
Bosque County, Texas
Trial Court No. CV18277


## DISSENTING OPINION


With all due respect to the trial court, the parties, and their attorneys, the issue in this proceeding about the limited nature of Warren and Terri's interest was as critical as the nature of Steven's interest. To their credit, Warren and Terri admitted in their pleadings that they had a fee simple interest *only* if they could successfully extinguish Steven's interest. Warren and Terri never disavowed their agreement and never pleaded or suggested that they purchased a fee simple interest in the property, at least not until after the trial court announced its judgment. By their pleadings and evidence, Warren

and Terri sought to prove they now owned the property in fee simple by establishing that Steven had failed to fulfill a condition precedent to maintaining his interest in the property, a condition that he did not even know about and for which performance was never demanded. I can agree that Warren and Terri proved it was not a traditional life estate; but as the plaintiff in a declaratory judgment action, they have failed to prove Steven had no interest in the property. I would reverse the trial court's judgment and remand for further proceedings.

This is a sad case. A nephew (Warren and Terri) buys his aunt and uncle's property with an agreement to let them, and their son, the buyer's cousin, live on and use a portion of the property for as long as the aunt, uncle, and cousin want. Fulfilling the sales agreement, Aunt and Uncle convey to Nephew and his wife title to the property but the deed does not include the description of Aunt/Uncle/Cousin's interest. Aunt and Uncle die. Cousin, who by this time had moved in to take care of his parents, continues to live there, unaware of the agreement his parents had negotiated with Nephew that Cousin could live there as long as he wants. Then Nephew demands rent from Cousin without informing Cousin of the agreement.

Nephew never denies that part of the consideration for the purchase of the property was the agreement that Aunt, Uncle, and Cousin could live on a designated portion of the property as long as they wanted. No doubt Aunt and Uncle died believing they had provided a place for their son to live for as long as he needed/wanted it. And blood being thicker than water, one would expect that Nephew would honor the agreement, which allowed him to acquire the property in the first instance. Aunt and

Uncle fully complied with the agreement by executing the deed.[1]  Unfortunately, they are both dead and cannot help Cousin, their son, obtain the benefit they negotiated for him and the agreement that Nephew agrees he made.

As I view the evidence, there was nothing tried in this proceeding outside the pleadings.  Cousin certainly did not have any reason to believe, based on the pleadings or the evidence being admitted, that anything was at issue other than that Nephew was trying to terminate Cousin's interest, whatever it was, because Cousin had not paid for insurance and taxes (Cousin had paid for his own utilities).  The effort to evict was not based on the argument or evidence that Nephew owned fee simple title from the time he acquired the property from Aunt and Uncle.  Rather, it was that Cousin's interest had been extinguished or somehow never sprung forth, because, Nephew argued, Cousin had breached the agreement, of which Cousin was unaware, to also pay insurance and taxes, so that, due to Cousin's default, Nephew became the owner of the property in fee simple.

The effect of the agreement as argued by Nephew is problematic.  Nephew argues it created an obligation to pay for insurance and taxes and to maintain the property.  If that is what the agreement said, this is, at best, a breach of contract suit or a suit for specific performance.  But, that is not what the agreement says.  The agreement merely says that as long as Aunt, Uncle, or Cousin are in possession of the designated portion of the premises, Nephew is "…not responsible for the payment of insurance, utilities and

---

[1] In this regard, it is the inverse of the classic *Hooks v. Bridgewater* fact pattern.  *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114 (1921).

property tax for the house, smoke house and garage." It does not establish an express obligation for Aunt, Uncle, or Cousin to pay those expenses, or to maintain the property in its current condition.[2]

This agreement was problematic from the beginning for other reasons as well. Was it only the property tax on "the house, smoke house and garage" that were not Nephew's responsibility or was it on the entire tract? And did Aunt and Uncle have to maintain a property owner's liability insurance policy and keep up the fences on the entire tract or just the small portion of which they had possession? What happened in the event there was no insurance and there was a catastrophic loss? Did Nephew have to rebuild so that Aunt and Uncle could continue to live there?

Moreover, Nephew's pleadings make it clear that he recognized under the agreement he made with Aunt and Uncle that Cousin had some interest in the use of the house, smoke house, and garage after Aunt and Uncle passed away. Whether that interest rose to the level of a life estate or was merely a license or a lease are nuances in determining the nature of an interest in real estate which cannot be resolved today. Also, whether the agreement created an obligation for Aunt, Uncle, or Cousin to obtain and maintain insurance and pay the property tax on some portion of the property during the possession of Aunt, Uncle, or Cousin or whether it was a condition precedent to entry or continued possession cannot be decided in this appeal. Likewise, whether the payment

---

[2] Maintenance of the property became part of the issue about the nature of Cousin's interest if he had a life estate. Clearly, it was not a life estate because it existed only if Cousin was in possession of the applicable portion of the property. If it was a life estate, Cousin would not have been obligated to remain in possession for its continued existence. Rather, he could have conveyed or sold a life estate in the property. From the express terms of the agreement, Cousin had to live on the property to retain the contracted rights.

of insurance and taxes by Nephew during the remaining life of Aunt and Uncle waived the alleged condition precedent cannot be resolved in this appeal. The issue that was pled and tried is not, as the trial court determined, the nature of Nephew's title at the time of the agreement as limited by the deed executed by the parties. There was more to the deal than the deed; and the parties litigated the deal, not the deed.[3]

I have no quarrel with the law set out in the opinion of the Court.[4] Rather, I view the pleadings and nature of the evidence somewhat differently than the Court, in that the extent of the interest conveyed by the deed was never the issue in the case, and stray remarks about that issue in the evidence or argument, if any, is not the type of event that raises a tried-by-consent argument that Nephew owned a present fee simple interest based solely on the deed which was not subject to Aunt's, Uncle's, or Cousin's interest as agreed upon.[5]

---

[3] The trial court rendered judgment on the record at the conclusion of the trial as follows:

> Having heard all your evidence, reviewed the contents of the file, I will find that a life estate in Exhibit No. 2 was not created. And even if it had, it was superceded (sic) by the deed. There were no reservations of the life estate in that deed. So the parties, Mr. Warren and Mrs. Terri Dahl, are 100% owners in fee simple of the estate – or the property that we're discussing.

[4] The only statement about the law with which I disagree is the statement, in dicta, that a judgment not supported by the pleadings is void. If that was ever an accurate statement of the law, it is now an overstatement of the legal effect of deficient pleadings. If it was truly void, a judgment could be attacked years after it was signed and otherwise became final, on the theory that it was unsupported by the pleadings. *Dubai* has foreclosed such an argument. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000). A judgment may be erroneous and subject to attack by direct appeal because it is not supported by pleadings, as in this case, but if not set aside on direct appeal and it becomes final, it cannot be later attacked for a pleading deficiency.

[5] The opening line of the Court's opinion frames my disagreement with it. This was a suit for declaratory judgment brought by Nephew about the rights of the parties. It was not brought as a trespass to try title case, as it possibly should have been, to determine ownership and quiet title to the property. But Cousin never contended he "owned" an interest, as such, in the title to the property. At most, Cousin's lawyer

Accordingly, because I would hold that the judgment is not supported by the pleadings and would reverse the judgment and remand for further proceedings rather than affirm the trial court's judgment, I respectfully dissent.


TOM GRAY
Chief Justice

Dissenting opinion delivered and filed December 1, 2021



---

characterized it as being "in the nature of a life estate." While that could be a general description, it is not a legally accurate one. Moreover, this case presents the problem of what is a trial court supposed to do when the party that sought a declaratory judgment simply fails to produce adequate evidence for the trial court to properly determine the relative rights of possession between the parties? Should this be like we have held in family law where the standard of review for a division of community property is an abuse of discretion, and when the parties have failed to present adequate evidence the trial court abuses its discretion when it nevertheless attempts to divide the property? *See Boyd v. Boyd*, 131 S.W.3d 605, 610-611 (Tex. App.—Fort Worth 2004, no pet.). I think it could be. *See Skeels v. Suder*, No. 02-18-00112-CV, 2021 Tex. App. LEXIS 8377, at *18-19 (Tex. App.—Fort Worth Oct. 14, 2021, no pet.h.) (mem. op on reh'g); *Waldrop v. Waldrop*, 552 S.W.3d 396, 401 (Tex. App.—Fort Worth 2018, no pet.) (en banc op. on reconsideration). But that is not the issue that has been presented to us, and therefore, I have limited my discussion and analysis to the pleading issue presented.

Dahl v. Dahl