**Opinion issued April 18, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

### NO. 01-22-00426-CV

———————————

**JUSTIN CARL FOLSOM, Appellant**

**V.**

**CORIN CARDENAS FOLSOM, Appellee**

---

**On Appeal from the County Court at Law**
**Washington County, Texas**
**Trial Court Case No. CCL9686**

---

### MEMORANDUM OPINION

Appellant Justin Carl Folsom appeals from the trial court's Final Decree of Divorce. In a single issue, Appellant argues the trial court erred by holding that the house where Appellant lived with his former wife was the equal, undivided

separate property of both spouses and awarding a fifty percent interest in the house to each spouse. We affirm.

## Background

**The Purchase of the House**

Corin Cardenas Folsom ("Corin") and Justin Carl Folsom ("Justin") began dating in December 1999 and married in July 2005.[1] The parties started living together as a couple in 2003 or 2004, when Corin moved in with Justin and his grandfather. In September 2004, while the parties were still living together, Justin purchased a house in Brenham, Texas ("House") from Corin's parents. Justin did not make a down payment. He signed a Deed of Trust and Note ("Purchase Documents") for the House. The Purchase Documents indicate the House was purchased by "Justin C. Folsom, a single man." Corin's name does not appear on the Purchase Documents.

In 2004, Justin and Corin moved into the House and they opened a joint bank account. They subsequently married on July 23, 2005. Beginning with the "initial payments," the House mortgage was paid out of the joint bank account where both of the parties' paychecks were deposited. Property taxes for the House were also paid from the joint bank account. Once Corin and Justin moved into the

---

[1] Corin and Justin had one child but the portion of the divorce decree that pertains to the child is not on appeal.

House, they lived there together until they "split up" in November 2020. At that time, they separated their finances.

**The Bench Trial**

Corin filed a *pro se* suit for divorce, and Justin filed an answer, also *pro se*. Corin subsequently hired counsel and filed amended petitions for divorce. Corin filed her First Amended Petition in January 2022, and her Second Amended Petition on the same day as trial, on April 4, 2022. In her Second Amended Petition, Corin asks for reimbursement to the community estate "for funds or assets expended by the community estate for the benefit of Justin Carl Folsom's separate estate." In her Statement of Relief Requested, also filed on April 4, 2022, Corin prayed for the House to be awarded as fifty percent her separate property and fifty percent Justin's separate property.

After an unsuccessful mediation, the parties appeared for a bench trial on April 4, 2022. Justin appeared *pro se* and Corin was represented by counsel. At the beginning of trial, Justin stated that he thought the only issue left to be decided was child support, and he moved for a continuance to hire an attorney. The trial court denied his oral motion for continuance, and the bench trial commenced.

Corin and Justin were the only witnesses at trial. The trial court heard testimony regarding the amount of child support, the division of debt, and the disposition of the House. Only the disposition of the House is at issue in this

3

appeal. Corin argued that the House should be confirmed as the separate property of both spouses because they lived together and paid for the House together. Justin argued that the House should be confirmed as his separate property.

Corin testified that she and Justin had been in a relationship since 1999 and started living together in 2003, when she moved in with Justin and his grandfather. According to Corin, when she and Justin were living together at Justin's grandfather's house, they "were both actively looking for a place to purchase on [their] own." She testified that her parents knew she and Justin were looking for a place to live, and Justin told her father that if he was interested in selling the House, Justin would be willing to buy it, which Justin eventually did in 2004. Corin testified that when Justin purchased the House from her parents, she and Justin had been living together at Justin's grandfather's house, and they then moved in "together as a couple" to the House.

Corin testified that her name was not included on the House Purchase Documents because she and Justin "were in a mutual agreement that it was only going to be his name on there. . . . There was no real specific reason. . . . He mentioned it, and I just went along with it. I was in agreement." She explained that Justin did not make a down payment for the House because he qualified for "a first-time buyer program." Corin testified that after they moved into the House, she and Justin combined finances, opening a joint bank account where both of their

4

paychecks were deposited. Corin testified that all of their House expenses, including the mortgage, taxes, and utilities, were paid from their joint bank account.[2] They also paid for "[a]ll living expenses, vehicles, bills, food" from their joint bank account. Corin testified that she lived with Justin in the House until they separated in November 2020, at which time they also separated their finances.

Corin testified that she and Justin "moved in[to the House] before the closing," but Justin testified that he and Corin did not move into the House until after the House purchase was complete.[3] Despite this discrepancy, the parties agree that they moved into the House before they got married on July 23, 2005. Justin testified:

> I bought this house. I fixed this house. And after *we* purchased this house, this is when we moved in together and eventually put our assets together as in checking accounts and whatnot.

(Emphasis added.) Justin testified that he and Corin started living together as a couple at his grandfather's house at "the end of . . . 2004."[4] He testified that he and Corin were not living together when he bought the House, but during cross-examination, he testified that he and Corin were living at his grandfather's house "and then [they] moved in together, as a couple, to [the House]." Justin also

---

[2]     Justin did not controvert this testimony.

[3]     The Purchase Documents indicate the closing date was September 16, 2004.

[4]     On appeal, Justin explains that he and Corin began living together in 2003.

acknowledged that he never lived at the House until he and Corin moved into the House together.

According to Justin, he purchased the House because Corin's parents were in financial trouble and were facing a potential foreclosure. He testified that he was on the market for a house, and that he bought the house in his name only because he and Corin were not married. But during his testimony, Justin also testified that he bought the House "so we'd have a place to live." Justin did not dispute that all payments for the House were paid from the parties' joint bank account.

During closing arguments, Corin's counsel argued that the House should be confirmed as the equal, undivided separate property of the parties, while Justin requested that the House be confirmed as his separate property. At the end of the trial, the trial court held that the House was the equal, undivided separate property of Corin and Justin:

> [W]ith respect to the home, the Court will find and affirm that it is one half [Corin's] separate property and one half [Justin's] separate property. It appears from the Court, based on the facts, that you were together, you bought the home together, you moved into it together, you lived in it together and have for many, many years. And so it's clearly – it wasn't bought while you were married so it's not community property, but I do believe it's half each of your separate property at this point.

This appeal followed.

6

**Discussion**

In a single issue on appeal, Justin argues the trial court erred by confirming the House as the equal, undivided separate property of both spouses. He argues the evidence presented at trial is insufficient to support the trial court's finding because the House is entirely his separate property and Corin has no interest in the House. Justin claims there is no evidence that he and Corin "intended any sort of partnership or joint venture in the purchase" of the House, and that the mere fact the parties paid for the House with joint funds is insufficient to characterize the House as the parties' equal, undivided separate property.

## A. Standard of Review

We review a trial court's characterization of marital property in a divorce proceeding for an abuse of discretion. *Raymond v. Raymond*, 190 S.W.3d 77, 80 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Goode v. Garcia*, No. 01-20-00143-CV, 2021 WL 6015296, at *3 (Tex. App.—Houston [1st Dist.] Dec. 21, 2021, no pet.) (mem. op.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules and principles. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). A trial court lacks discretion to award the separate property of one spouse to the other. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex. 1977) ("Trial courts have a broad latitude in the division of

the marital community property, but that discretion does not extend to a taking of the fee to the separate property of the one and its donation to the other.").

In family law cases, legal and factual sufficiency challenges, while not independent grounds for asserting error, are relevant factors in determining whether the trial court abused its discretion. *Kelly v. Kelly*, 634 S.W.3d 335, 346 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing *Syed v. Masihuddin*, 521 S.W.3d 840, 847 (Tex. App.—Houston [1st Dist.] 2017, no pet.)). "In determining whether an abuse of discretion exists because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion." *Id.* We may not substitute our judgment for that of the finder of fact if the evidence "falls within the zone of reasonable disagreement." *Id.* at 347.

In conducting a legal sufficiency review of a finding regarding the separate character of property, we review the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true." *Id.*; *see also Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.) ("While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed."). In our legal

8

sufficiency review, we "credit[] favorable evidence if a reasonable factfinder could do so and disregard[] contrary evidence unless a reasonable factfinder could not." *Kelly*, 624 S.W.3d at 346–47 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We will not sustain a legal sufficiency or "no evidence" point unless the record demonstrates that: "(1) there is a complete absence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact." *Aaron v. Aaron*, No. 14-10-00765-CV, 2012 WL 273766, at *1 (Tex. App.—Houston [14th Dist.] Jan. 31, 2012, no pet.) (mem. op.) (citing *City of Keller*, 168 S.W.3d at 810).

In a factual sufficiency review, we consider the evidence that the finder of fact could reasonably have found to be clear and convincing. *Boyd*, 131 S.W.3d at 611; *Kelly*, 634 S.W.3d at 347. We determine "whether, based on the entire record, a factfinder could reasonably form a firm belief or conviction that the allegations were proven." *Boyd*, 131 S.W.3d at 611. We will set aside a finding only if it is "so against the great weight and preponderance of the evidence as to be manifestly unjust." *Raymond*, 190 S.W.3d at 80 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

9

Finally, we review the trial court's conclusions of law de novo. *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 608 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Tatum v. Tatum*, No. 14-11-00622-CV, 2012 WL 1795112, at *2 (Tex. App.—Houston [14th Dist.] May 17, 2012, no pet.) (mem. op.). Characterization of marital property is a conclusion of law. *Id.* We must uphold the trial court's conclusions of law "if the judgment can be sustained on any legal theory supported by the evidence." *In re Marriage of Green & McDaniel*, No. 12-17-00034-CV, 2017 WL 3224866, at *2 (Tex. App.—Tyler July 31, 2017, no pet.) (mem. op.) (citing *City of Houston v. Cotton*, 171 S.W.3d 541, 546 (Tex. App.–Houston [14th Dist.] 2005, pet. denied)). If findings of fact and conclusions of law are neither requested nor filed, as in this case, it is "implied that the trial court made all the findings necessary to support its judgment." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (citing *Lemons v. EMW Mfg. Co.*, 747 S.W.2d 372, 373 (Tex.1988)).

## B. Analysis

Justin argues the trial court mischaracterized the House by designating it as the equal, undivided separate property of both spouses. He asserts his purchase of the House, in his sole name, nearly eleven months before his marriage to Corin is dispositive. He further argues that Corin, who conceded the House is not community property, did not present any evidence that she or Justin intended for

the purchase of the House to be a joint venture or partnership, and that there is no evidence they agreed they would co-own the House. Thus, he argues, the House was entirely his separate property.

Corin responds that purchase of the House prior to her and Justin's marriage does not preclude a finding she has an equal, undivided separate interest in the House. Relying on *Harrington v. Harrington*, 742 S.W.2d 722 (Tex. App.—Houston [1st Dist.] 1987, no writ) and *Aaron v. Aaron*, No. 14-10-00765-CV, 2012 WL 273766 (Tex. App.—Houston [14th Dist.] Jan. 31, 2012, no pet.) (mem. op.),[5] she argues the trial court did not err in confirming the House as the equal, undivided separate property of the parties because all payments on the House were paid from the parties' joint account and "the parties' intent is an important factor."

A spouse's separate property consists of "(1) the property owned or claimed by the spouse before marriage; (2) the property acquired by the spouse during marriage by gift, devise, or descent; and (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage." TEX. FAM. CODE § 3.001. Community property "consists of the property, other than separate property, acquired by either spouse

---

[5] Corin relies primarily on *Harrington v. Harrington*, 742 S.W.2d 722 (Tex. App.—Houston [1st Dist.] 1987, no writ) on appeal. During trial, she relied on *Aaron v. Aaron*, No. 14-10-00765-CV, 2012 WL 273766 (Tex. App.—Houston [14th Dist.] Jan. 31, 2012, no pet.) (mem. op.).

11

during marriage." *Id.* § 3.002. A trial court lacks authority to divest a spouse of separate property. *Kelly*, 634 S.W.3d at 348.

"We presume that property possessed by either spouse during or on dissolution of the marriage is community property." *Id.* (citing TEX. FAM. CODE § 3.003(a)). The spouse who seeks to overcome that presumption has the burden to establish the separate character of the property by clear and convincing evidence. TEX. FAM. CODE § 3.003; *Kelly*, 634 S.W.3d at 348; *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011); *see also* TEX. FAM. CODE § 101.007 ("'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.").

At trial, neither party argued the House was community property. The only issue before the trial court was whether the House should be characterized as the sole separate property of Justin or the equal, undivided property of both spouses. The nature of property—whether it is separate or community—is generally determined by its character at inception. *Kelly*, 634 S.W.3d at 348. The "Inception of Title" doctrine provides that the nature of property is determined "when a party first has a right of claim to the property by virtue of which title is finally vested." *Id.* at 349. However, the intention of the spouses as shown by the circumstances surrounding the inception of title is the foremost consideration in determining the

12

characterization of property as either community or separate property. *Boyd*, 131 S.W.3d at 612 (citing *Scott v. Estate of Scott*, 973 S.W.2d 694, 695 (Tex. App.—El Paso 1998, no pet.)).

At first blush, the Inception of Title doctrine suggests the House is Justin's separate property. He alone signed the Purchase Documents, which reflect Justin purchased the House, prior to his marriage to Corin, as "Justin C. Folsom, a single man." But the intention of the spouses as shown by the circumstances surrounding the purchase of the House cast doubt on the argument that the House is Justin's sole separate property.

Corin testified that she and Justin lived together as a couple starting in 2003, before Justin purchased the House. She testified that when Justin purchased the House from Corin's parents, she and Justin were "both actively looking for a place to purchase on [their] own." Shortly after Justin purchased the House from Corin's parents, Corin and Justin moved into the House as a couple. Justin never lived at the house alone. Corin testified, and Justin agreed, that they moved into the House together. Corin testified that neither she nor Justin maintained separate bank accounts while they were living together in the House. Instead, the parties opened a joint bank account shortly after moving into the House, and according to Corin's undisputed testimony, all House expenses, including the mortgage, taxes, utilities, and other House-related expenses, "ran through the same account and [were] paid

for together" from the parties' joint bank account. Justin did not make a down payment to purchase the House. And there is no indication Justin signed an earnest money contract or that he paid closing costs from his separate funds, and there is no evidence showing that Justin used separate funds to pay for any other House expenses. Justin asserted during trial that because he made more money than Corin, he paid the mortgage and she paid utilities and other items. But it is undisputed that the funds all came from the same joint checking account.

Corin relies on *Harrington* to support her argument that the House is the equal, undivided separate property of both spouses. In *Harrington*, the husband ("Brian") complained of the trial court's determination that he and his former wife ("Gay") each owned an undivided one-half interest in a house he purchased two years before their marriage. *Id.* at 723. Like Justin does here, Brian asserted that when he purchased the house, the credit application and title to the property were only in his name. *Id.* The evidence showed that the Harringtons lived together prior to the purchase of the house and that they looked for prospective houses together. *Id.* at 724–25. Gay testified that Brian told her that because she was "earning so little money at the time," he would apply for the house loan himself and put his name on it. *Id.* at 725. She agreed, not understanding the nature of separate versus community property. *Id.* She testified that she and Brian referred to the house as "our home," that Brian did not claim the house was only his before

14

their separation, that they both contributed to improving the house through their separate bank accounts, and that Brian never indicated to Gay she would not have an ownership interest in the house. *Id.* We determined there was some evidence to support the trial court's conclusion that the couple intended to purchase the property as partners, and as such, the trial court did not abuse its discretion in determining the parties owned the property as tenants in common with each having an undivided one-half interest as separate property.[6] *Id.*

Justin contends *Harrington* is inapposite because there is no evidence he and Corin agreed they would co-own the House. Justin argues he "simply did not see why he would have purchased his House for Corin's benefit so long as they were not yet married." Yet, Justin conceded during trial that he never lived in the House

---

[6] Although she does not rely on it on appeal, at trial Corin relied on *Aaron v. Aaron*, No. 14-10-00765-CV, 2012 WL 273766, at *1 (Tex. App.—Houston [14th Dist.] Jan. 31, 2012, no pet.) (mem. op.). In *Aaron*, "Daryl" and "Kimberly" began to live together after moving into a house two years before they were married. *Id.* at *1. When they separated after nearly seven years of marriage, the court awarded an undivided one-half interest in the house to each spouse as separate property. *Id.* at *4. The trial court noted that the closing documents and earnest money contract were only in Daryl's name, but that the couple had determined the house would be purchased in Daryl's name alone because Kimberly's poor credit would have resulted in a higher interest rate if she had co-purchased the house. *Id.* at *3-4. The court held that the couple had purchased the house jointly and intended to be joint owners of the house, noting that Kimberly paid half of the down payment and closing costs. *Id.* at *4. The court held Daryl and Kimberly were tenants in common. *Id.* The court of appeals affirmed. *Id.* at *1.

In distinguishing the present case from *Aaron*, Justin says there is no evidence that Corin paid any part of the closing costs for the House. But during trial, Justin did not controvert Corin's testimony that there was no down payment and that all House–related expenses were paid for jointly.

without Corin, and that he bought the House "so [they would] have a place to live." Justin also testified that he and Corin lived together when he purchased the House, and during his testimony, he referred to the purchase of the House as the parties' purchase: "[A]fter *we* purchased this house, this is when we moved in together and eventually put our assets together as in checking accounts and whatnot." (Emphasis added.) There is no indication that at the time of purchase, Justin intended for the House to be his alone. Rather, Corin's testimony that she and Justin "were both actively looking for a place to purchase on [their] own," coupled with Justin's testimony that he and Corin were living together when he bought the House, that he purchased the House so that he and Corin would "have a place to live," that he never lived in the House prior to moving there with Corin, and that he and Corin always used joint funds to pay for all expenses suggests Justin and Corin intended the House to be theirs together.

Justin further argues that "[m]ere cohabitation and payment from joint funds is insufficient to divest Justin of any portion of his separate property[.]" But the evidence before the trial court was not limited to cohabitation and payment from joint funds. As noted, the evidence reflected that the couple lived together prior to moving into the House, they both actively looked together for a house, and the House was purchased so they would have a place to live. Further, Justin never established that he used separate property to pay closing costs, an earnest money

16

contract, or any other house-related expenses. *See Schneider v. Schneider*, No. 2-02-075-CV, 2004 WL 254247, at *6 (Tex. App.—Fort Worth Feb. 12, 2004, pet. dism'd) (mem. op.) (holding dog acquired by wife before marriage was owned by spouses as tenants in common; evidence showed spouses lived together before marriage, comingled their funds in joint bank account, used comingled funds to purchase dog, and neither spouse established by clear and convincing evidence that dog was purchased with separate property funds).

We find *Leighton v. Leighton*, 921 S.W.2d 365, 366 (Tex. App.—Houston [1st Dist.] 1996, no writ), upon which Justin relies, to be distinguishable. In *Leighton*, a man who was deeded an unimproved ranch married a month after receiving the ranch. *Id.* at 366. The couple built a home on the land after jointly executing a loan application, lien, note, and deed of trust. *Id.* When the couple divorced, the wife contended that while the ranch had been the husband's separate property, he gave her a half interest in the ranch when they built a home on it. *Id.* at 367. The husband denied giving her any interest in the ranch, but the wife argued that property acquired with borrowed funds being repaid with community income belongs to the community estate. *Id.* The trial court characterized the ranch as community property but we reversed and remanded, holding that the ranch was the husband's separate property: "The ranch . . . was not *acquired* with borrowed funds. It was *improved* with borrowed funds. Once separate property

17

character attaches, that character does not change because community funds are spent to improve the property." *Id.* (emphasis in original). By contrast, the evidence in the present case shows that Corin and Justin both paid for the House. Even though Justin's name is the only name on the Purchase Documents, there is no evidence Justin acquired the House or paid for any house-related expenses with separate funds. Therefore, *Leighton* is not controlling.

In light of Corin's undisputed testimony that she and Justin lived together prior to the purchase of the House, that they both actively looked for a house in which to live together, that they moved into the House together, that Justin only lived in the house with Corin, and that all payments toward the House came from the joint checking account the parties established upon moving into the House, we find there is sufficient evidence to support the trial court's judgment that the House is the equal, undivided separate property of both spouses. Indeed, in holding each spouse has a fifty percent interest in the House as separate property, the trial court observed that they were together when the House was purchased, they "bought the home together," they moved into it together, and they lived in it together for "many, many years." *See In re Marriage of Louis*, 911 S.W.2d 495, 496 (Tex. App.—Texarkana 1995, no writ) ("In determining whether there is sufficient evidence of a joint venture, the participation, activities, and objectives of the parties may all be considered."); *Harrington*, 742 S.W.2d at 724 (holding parties'

intent is "an important factor" in determining whether partnership exists between spouses or cohabitants in purchase or ownership of property) (citing *Negrini v. Plus Two Advertising, Inc.*, 695 S.W.2d 624, 631 (Tex. App.—Houston [1st Dist.] 1985, no writ)); *cf. Aaron*, 2012 WL 273766 at \*4 (holding house purchased in husband's name alone prior to marriage was owned by both spouses as tenants in common after divorce because they intended to be joint owners of house, wife paid one half of down payment and closing costs, and wife paid for food and utilities each month equal to husband's mortgage payments; fact that husband signed earnest money contract and closing documents was not dispositive with regard to characterization of property).

We overrule Justin's sole issue.

## Conclusion

We hold the trial court did not abuse its discretion in confirming the House as the equal, undivided separate property of the parties, and awarding the spouses an undivided one-half interest in the House.

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

19