

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00152-CV

———————————————————

IN THE INTEREST OF C.R., A CHILD

---

On Appeal from the 324th District Court
Tarrant County, Texas
Trial Court No. 324-741266-23

---

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Mother appeals from the trial court's order granting Father's motion to modify the parent-child relationship; the order gives Father the exclusive right to designate their son's (Craig's) primary residence and orders Mother to pay child support using the minimum wage as the basis for determining her payments.[1] After reviewing Mother's pro se brief, we hold that she has not shown that the trial court abused its discretion and affirm the trial court's modification order. *See* Tex. R. App. P. 44.1.

## I. Background

Mother and Father had a child, Craig, in 2008. Mother and Father were never married.

In February 2017, in an "Order in Suit Affecting Parent–Child Relationship," the trial court appointed Mother and Father as Craig's joint managing conservators, designated Mother as the conservator with the exclusive right to determine Craig's primary residence, and ordered Father to pay child support to Mother.

In August 2023, Father filed a "Petition to Modify Parent–Child Relationship" in which he asked the trial court to designate him as the conservator having the exclusive right to determine Craig's primary residence and to modify child support. Father also filed a motion under Section 153.009 of the Texas Family Code to have

---

[1]We use the alias "Craig" to identify the child and refer to his family members by their relation to him. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

the trial court interview Craig—who was then fourteen years old—in chambers to determine Craig's wishes regarding, among other issues, who should have the exclusive right to determine his primary residence.[2] *See* Tex. Fam. Code Ann. § 153.009.

In April 2024, after a hearing on temporary orders and an in-chambers interview with Craig, an associate judge designated Father as the conservator with the right to determine Craig's primary residence, terminated Father's obligation to pay child support, and instructed the attorneys to calculate Mother's child support, which was to begin in August 2024. Mother requested a de novo hearing before the district judge. *See id.* § 156.006(a), (b)(3).

The district judge conducted a temporary-orders hearing on July 1, 2024, and interviewed Craig in chambers on July 10, 2024. On July 11, 2024, by letter, the district judge informed the parties that it was affirming the associate judge's report with one modification: Mother's summer access to Craig, which the district judge modified to alternating weeks. *See id.* The trial court instructed Father's attorney to draft an order.

On September 10, 2024, based on the two earlier hearings and interviews with Craig, the trial court signed the temporary order designating Father as the conservator with the exclusive right to determine Craig's primary residence, terminating Father's

---

[2]The subsequent in-chamber interviews played a role in the trial court's rulings and are the basis of some of Mother's complaints.

obligation to pay child support effective April 1, 2024, and ordering Mother to pay child support to Father in the amount of $773.44 per month beginning on August 1, 2024.

Thereafter, on March 3, 2025, a visiting judge conducted a bench trial. After hearing the evidence, the visiting judge adopted the district judge's temporary order with one exception: the visiting judge ordered that Mother's child support be calculated based on the minimum wage beginning April 1, 2025. The final order set Mother's child support at $228.00 per month.

## II. Briefing Deficiencies

As a preliminary matter, we address Mother's brief, which presents its own challenges. Although nominally Mother has enumerated twelve issues, she breaks her argument section down into twenty-two categories. Further complicating the matter, each page of her approximately forty-five-page brief contains a myriad of complaints. For the reasons given below, we will treat her brief as one issue globally asserting that the trial court abused its discretion by (1) designating Father as the conservator with the exclusive right to determine Craig's primary residence and (2) ordering Mother to pay child support.

### A. Legal Principles

Mother represents herself pro se. Despite that, we must hold her to the same standards as parties represented by counsel. *Anastasi v. McHorse*, No. 03-23-00274-CV, 2024 WL 968887, at *5 (Tex. App.—Austin Mar. 7, 2024, no pet.) (mem. op.).

4

On the other hand, we must construe briefs liberally but reasonably so that the right to appeal is not lost by waiver. *Id.*; *see* Tex. R. App. P. 38.9. Construing briefs liberally but reasonably is not always straightforward. Our construction cannot be so liberal that we abandon our role as a neutral adjudicator and assume the role of an advocate. *Craaybeek v. Craaybeek*, No. 02-20-00080-CV, 2021 WL 1803652, at *5 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.). Appellate courts cannot make arguments for a party and then adjudicate the case based on the arguments that the court made on that party's behalf. *Id.*

Rather, the appellant must discuss her assertions, cite to and expound on the facts and the authorities on which she relies, and put forth some specific argument and analysis showing that both the record and the law support her contention. *Id.* Rule 38.1(i) of the Texas Rules of Appellate Procedure requires an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i).

## B. Application

Although voluminous, Mother's pro se brief fails in its record references and its citations to legal authorities.

### 1. Record References

The record references in Mother's brief are deficient. There are no record references in her statement of the issues presented, in her statement of facts, in her summary of the arguments, or in her argument section.

5

Mother's brief is not, however, devoid of record references. In an "Appendix of Record References Supporting Statement of Facts," she devotes a little over three pages to record references, but she does so largely independently of any of her arguments.

Further complicating the matter, many of the record references in her appendix are inaccurate or fabricated. For example, she appears to refer to five volumes of the reporter's record, but there are only three volumes.[3] She refers to reporter's record pages 103–05, 200–10, and 250–55, but the reporter's record of her trial consists of only 83 pages. Elsewhere she alleges that the trial court allegedly suppressed parental speech, denied her the right to respond, ruled disproportionately in Father's favor,[4] refused to allow her to cross-examine a key witness, and retaliated against her; she provides record references in conjunction with these allegations, but the references do not support her assertions.

On other occasions she makes factual allegations without record references but which, based on our review of the record, have no basis whatsoever. We provide three examples.

---

[3]There is also one short supplemental reporter's record of the trial court entering its order on May 5, 2025.

[4]The record reference for this allegation shows the trial court sustaining one of Mother's objections and overruling Mother's other objection.

First, Mother contends that a 2016 order sanctioned Father in the amount of $71,000 and that Father still owes her that money, but she does not explain how she arrived at this number. The record does not contain a 2016 order. The trial court's February 2017 "Order in Suit Affecting Parent–Child Relationship" sanctioned Father $750.

Second, Mother wants Father to reimburse her for $16,400 in attorney's fees. Although the record shows that Mother had retained counsel at one point, the record does not show how much she paid him.[5]

Third, Mother contends that as a result of Father's motion to modify, she has been diagnosed with "Legal Abuse Syndrome (LAS), PTSD, and panic disorder" and that she wanted reimbursement for $3,336 in mental health treatment costs. Although Mother testified during trial that she had been diagnosed with LAS, PTSD, and a panic disorder in March or June of 2024, she never specified how much she had paid for mental health treatment.

When making factual assertions in a brief, a party must provide precise references to the record supporting them. *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.). If the party does not make record references or if the party makes inaccurate, misstated, or misleading record

---

[5]Mother cites Section 156.101 of the Texas Family Code to support her position, but Section 156.101 has nothing to do with awards of attorney's fees. *See* Tex. Fam. Code Ann. § 156.101.

7

references, the brief fails. *Id.* Appellate courts will not perform an independent review of the record to determine whether the error complained of occurred. *Wilson v. Dunlap*, No. 01-00-00220-CV, 2001 WL 1632040, at *2 (Tex. App.—Houston [1st Dist.] Dec. 20, 2001, no pet.) (not designated for publication). Appellate courts are not able to evaluate an appellant's argument if the appellant makes no citations to the record. *Byrd v. Bellis 5312 Land Tr.*, No. 02-24-00246-CV, 2025 WL 1600211, at *4 (Tex. App.—Fort Worth June 5, 2025, no pet.) (mem. op.).

### 2. Legal Authorities

Mother's reliance on statutes and case law is likewise deficient. Each page of Mother's brief contains a litany of grievances with innumerable citations to statutes and cases, but she cites them with global allegations that the trial court violated the principles of the cited statutes or cases without explaining where in the record her alleged complaint arose or how she preserved her complaint for appellate review. "References to sweeping statements of general law are rarely appropriate." *Bolling*, 315 S.W.3d at 896.

### 3. Resolution

Nevertheless, construing Mother's brief liberally, we address her issues as best as we can. *See Anastasi*, 2024 WL 968887, at *5. At bottom, as we understand Mother's overall complaint, she contends that the trial court abused its discretion by designating Father as the conservator having the exclusive right to determine Craig's primary residence and by ordering her to pay child support, so we will treat her brief as

asserting that one issue. For the reasons given below, we hold that the trial court did not abuse its discretion.

### III. Legal Principles

A trial court has broad discretion when determining family law matters involving custody, support, visitation, and possession. *In re P.J.*, No. 02-24-00236-CV, 2025 WL 807494, at *5 (Tex. App.—Fort Worth Mar. 13, 2025, no pet.) (mem. op.); *In re A.I.M.*, No. 01-22-00409-CV, 2023 WL 8192530, at *5 (Tex. App.—Houston [1st Dist.] Nov. 28, 2023, no pet.) (mem. op.). The best interest of the child is the trial court's primary consideration in determining such matters. *A.I.M.*, 2023 WL 8192530, at *5. The trial court has substantial latitude when making its determinations. *Id.*

### IV. Standard of Review

We review conservatorship and child-support issues for an abuse of discretion. *Kazmi v. Kazmi*, 693 S.W.3d 556, 565 (Tex. App.—Austin 2023, pet. denied); *In re E.S.S.*, 658 S.W.3d 613, 616 (Tex. App.—El Paso 2022, no pet.); *In re R.R.K.*, No. 02-20-00302-CV, 2022 WL 1257136, at *3 (Tex. App.—Fort Worth Apr. 28, 2022, no pet.) (mem. op.). An abuse of discretion occurs when the trial court rules arbitrarily, unreasonably, without regard for guiding rules or principles, or without supporting evidence. *Kazmi*, 693 S.W.3d at 566. An abuse of discretion also occurs if the trial court fails to analyze or apply the law correctly. *A.I.M.*, 2023 WL 8192530, at *5.

In family law cases, the abuse-of-discretion standard overlaps with the traditional sufficiency standards of review; thus, although legal and factual insufficiency are not independent reversible grounds of error, they are relevant factors in assessing whether the trial court abused its discretion. *Kazmi*, 693 S.W.3d at 566; *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.). When a trial court relies on legally or factually insufficient evidence, it abuses its discretion. *P.J.*, 2025 WL 807494, at *5; *E.S.S.*, 658 S.W.3d at 616. When assessing the legal sufficiency of the evidence, we view the record in a light most favorable to the ruling to determine whether there is more than a scintilla of evidence to support it. *P.J.*, 2025 WL 807494, at *5; *E.S.S.*, 658 S.W.3d at 616. For factual sufficiency, we consider and weigh all of the pertinent evidence to determine whether the credible evidence supporting the challenged finding is so weak or so contrary to the overwhelming weight of the evidence that it must be set aside. *P.J.*, 2025 WL 807494, at *5; *E.S.S.*, 658 S.W.3d at 616. Throughout our review, we defer to the trial court's assessment of the witnesses' credibility and demeanor. *P.J.*, 2025 WL 807494, at *5. If there is conflicting evidence, it is the trial court's prerogative to resolve the conflict and believe one witness over another. *Id.*

## V. Discussion

### A. Father Met His Burden to Modify Conservatorship, Possession, and Access

One basis for modifying an existing order on conservatorship, possession, and access occurs when "the child is at least 12 years of age and has expressed to the court in chambers as provided by Section 153.009 the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child." Tex. Fam. Code Ann. §§ 153.009(a), 156.101(a)(2). The trial court made a Section 156.101(a)(2) finding in its final order. The record shows that both the associate judge and the district judge interviewed Craig in chambers as authorized under Section 153.009 and that after the interviews, both judges ordered that Father should have the exclusive right to designate Craig's primary residence. The record thus supports modifying conservatorship, possession, and access based on Section 156.101(a)(2). *See id.* § 156.101(a)(2).

#### 1. The Missing Interviews

Mother complains that she requested the reporter's record of both interviews but asserts that the court reporter did not make a record of either interview.[6] The record shows that Mother requested the reporter's records of the two interviews on

---

[6] In her brief, Mother complains about ex parte communications. In her appendix, she makes two record references to support this complaint, but they are not helpful. To the extent that she is referring to the in-camera interviews, the Texas Family Code authorizes those. *See* Tex. Fam. Code Ann. § 153.009(a).

three occasions. The record, however, does not show whether the court reporter was not present to make a record as Mother alleges or whether the court reporter was present, made a record, but for unknown reasons failed to prepare one. The record shows that Mother filed her requests in the trial court; the record does not show that she served her requests on the court reporter. Rule 34.6(b) requires making the request on the court reporter and filing a copy of the request with the trial court clerk. Tex. R. App. P. 34.6(b). Ultimately, however, the reporter's records of the two interviews are not necessary for our review.

The visiting judge who presided over the trial heard testimony that two judges had already interviewed Craig in chambers and that both had changed the conservator having the right to designate Craig's primary residence to Father. The reporter's records of the interviews were not introduced into evidence. A trial judge is presumed to consider only the testimony and exhibits properly in evidence, and an appellate court, as a general rule, does not consider documents not admitted into evidence. *Barnard v. Barnard*, 133 S.W.3d 782, 788–89 (Tex. App.—Fort Worth 2004, pet. denied). At trial, Mother did not complain about the absence of the reporter's records of those two interviews. The visiting judge was entitled to presume that whatever Craig told the associate judge and the district judge supported their rulings. *See In re C.J.*, 689 S.W.3d 417, 426 (Tex. App.—Dallas 2024, no pet.).

12

## 2. Shortened Summer Visitation

Mother complains that the trial court reduced her summer visitation by half. At the July 1, 2024 de novo hearing before the district judge, the trial court ordered that Mother and Father have alternating weeks of visitation during the summer. This modification deviated from standard summer possession, which is thirty consecutive days for parents who live 100 miles or less apart and is forty-two consecutive days for parents who live more than 100 miles apart. *See* Tex. Fam. Code Ann. §§ 153.312(b)(2), 153.313(3). The trial court's September 10, 2024 temporary order incorporated the district judge's modification only if Mother and Father lived 100 miles or less apart.

After the bench trial, the visiting judge adopted the district judge's previous temporary order on visitation. Regarding summer visitation, the final order—unlike the temporary order—applied the district judge's modification only if Mother and Father lived more than 100 miles apart. If they lived 100 miles or less apart, the final order provides for standard summer visitation, that is, thirty consecutive days. The record does not show how far apart Mother and Father live. Consequently, as a practical matter, we cannot tell if Mother's summer visitation was effectively modified.

Regardless, Mother was exercising her right to visitation inconsistently. In the eleven months that Craig had lived with Father—from April 2024 until March 2025— Mother had exercised her right to visitation only "about five times." Mother acknowledged that she no longer had a relationship with Craig. On this record,

13

Mother has not shown that the trial court abused its discretion by modifying Mother's summer visitation. *See Kazmi*, 693 S.W.3d at 565; *E.S.S.*, 658 S.W.3d at 616.

### 3. Overall

Other evidence shows that Father filed the motion to modify at Craig's request because Craig was upset about Mother's drinking. Father asserted that when Mother lived with him, she had a drinking problem and that it had never improved. Father said that in 2023, Mother would leave voicemails during which she slurred her words. Father maintained that he still had concerns about her sobriety. When asked if she still drank, Mother responded, "Occasionally." Mother admitted that her relationship with Craig was "destroyed," although she did not attribute that to her drinking but to Father's attempts to alienate Craig from Mother.

As the factfinder, the trial court determines who to believe, *see P.J.*, 2025 WL 807494, at *5, and based on its ruling, the trial court believed Father. Father's testimony supports the trial court's ruling. Thus, we cannot say that the trial court abused its discretion by naming Father as the conservator with the exclusive right to determine Craig's primary residence. *See Kazmi*, 693 S.W.3d at 565; *E.S.S.*, 658 S.W.3d at 616.

### B. Father Met his Burden to Modify Child Support

When a party seeks to modify an existing order on child support, one means of doing so is by showing that "the circumstances of the child or a person affected by the order have materially and substantially changed since the . . . date of the order's

14

rendition." Tex. Fam. Code Ann. § 156.401(a)(1)(A). Father met this burden. Craig lived with Father, not Mother. Father's paying Mother child support thus made no sense. Mother's paying Father child support did. The final order contains this finding. Because the record supports the trial court's finding, Mother has not shown that the trial court abused its discretion by ordering her to pay child support. *See Kazmi*, 693 S.W.3d at 565; *E.S.S.*, 658 S.W.3d at 616.

Regarding the amount of child support that the visiting judge ordered Mother to pay, Mother testified that she had lost her job toward the "end of 2023," that she was currently unemployed, and that she worked "odd jobs" that brought in about $2,000 to $2,500 per month. Mother said that since 2023, she has been helping people with their legal cases, but she denied giving them any legal advice. Mother said that she had an interview for a job that paid $95,000 per year the Friday before trial that she thought went really well. Adding to her financial difficulties, Mother admitted that she had been without a car since about April 2024. At trial, Mother gave conflicting answers on whether she currently had a car. First, she said she purchased a car two weeks before trial, but she later asserted that she would have one "very, very soon." The final order set Mother's child support at $228 per month. Because the record supports the trial court's ruling, Mother has not shown that the trial court abused its discretion by setting her child-support payments based on the minimum wage and reducing her child support from $773.44 to $228 per month. *See Kazmi*, 693 S.W.3d at 565; *E.S.S.*, 658 S.W.3d at 616.

## C. Best Interest

The final order contains a finding that the modifications were in Craig's best interest. The record supports that finding.

Regarding changing the conservator with the right to designate Craig's primary residence, the record showed that making the change was in Craig's best interest. Four examples follow.

First, Mother admitted that at the time of trial, she did not have a relationship with Craig. She added, "[I]t's destroyed now." Craig asked Father to pursue a modification. In the eleven months before trial, Mother had exercised her right to visitation only "about five times."

Second, Mother was having difficulties financially. She was unemployed and had been for over a year. Father's finances were not developed, but he asserted that Craig was currently on Medicaid and that he could place Craig on his health insurance through a private source.

Third, Mother acknowledged having several mental health issues. She denied being unstable, but the trial court was not required to believe her.[7] *See P.J.*, 2025 WL 807494, at *5.

Fourth, despite Mother's assertion that she drank only occasionally, the trial court could have believed the contrary. *See id.* Father testified that Mother had a

---

[7] At one point during the trial, the visiting judge advised Mother that she had to stay within the rules and commented, "[Mother,] you keep throwing a tantrum."

16

drinking problem when they lived together and that he still had concerns about her sobriety. According to Father, Mother's drinking is what prompted Craig to ask him to seek a modification.

In a bench trial, one of the trial court's roles is to resolve conflicts in the evidence and to determine which witnesses to believe and which ones to disbelieve. *See id.* Based on the trial court's ruling, it believed that Mother was experiencing several difficulties that impaired her ability to provide Craig a stable and safe home, that Craig no longer wanted to live with Mother, and that Craig wanted, instead, to live with Father. As an appellate court, we defer to the trial court's credibility and demeanor assessments. *Id.*

Regarding child support, each case involving child support must stand on its own unique facts, and by necessity, a trial court has wide discretion when deciding that issue. *Trahan v. Trahan*, 732 S.W.2d 113, 114 (Tex. App.—Beaumont 1987, no writ). Craig now lived with Father. Mother's helping Father to support Craig would appear to be in Craig's best interest. Mother has not made a compelling argument showing why it would not be.

We hold that Mother has not shown that the trial court abused its discretion by determining that the modifications were in Craig's best interest. *See Kazmi*, 693 S.W.3d at 565; *E.S.S.*, 658 S.W.3d at 616.

17

### D. Mother's Other Complaints

Mother had numerous other complaints, but as noted earlier, her brief fails to show that the record supports her allegations or that she preserved her complaints for appellate review. *See* Tex. R. App. P. 33.1. We will nevertheless address two of her procedural complaints—first, that she was denied a jury trial, and second, that the trial court erred by not making findings of fact and conclusions of law.

#### 1. Jury Trial

Mother contends that she timely requested a jury trial but was nevertheless denied one. Assuming Mother's request for a jury trial was timely, at the March 3, 2025 bench trial, she did not object to proceeding before the trial court. By not objecting to a bench trial, a party waives its right to a jury trial despite a properly perfected request. *See In re Montelongo*, 586 S.W.3d 513, 518 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Mother thus waived her right to a jury trial.[8]

#### 2. Findings of Fact and Conclusions of Law

Mother also complains that the trial court failed to make findings of fact and conclusions of law despite her request and despite her notice of past due findings of

---

[8]At the May 5, 2025 hearing at which the trial court entered its final order, Mother complained about not receiving a jury trial. The trial court informed Mother that she had waived her jury trial by not objecting to the bench trial on March 3, 2025. When Mother protested, the trial court responded, "Look, I'm not here to argue with you." Mother continued to protest and, in the process, used the f-word, to which the trial court replied, "[W]e don't need to hear that, no, ma'am. Thank you. We are done." Our review of the record shows that the trial court was correct, and by May 5, 2025, Mother's objection was untimely. *See* Tex. R. App. R. 33.1.

18

fact and conclusions of law. The short answer is that the trial court did not err because Mother's request was late.

The trial court signed its final order on May 5, 2025. Mother filed her request on May 30, 2025. A request for findings of fact and conclusions of law is due twenty days after a judgment is signed. *See* Tex. R. Civ. P. 296. Adjusted for the twentieth day falling on a Sunday, Mother's request was due Monday, May 26, 2025. *See* Tex. R. Civ. P. 4. When the party's request is late, the trial court is not required to make findings of fact and conclusions of law. *Gabel v. Gabel-Koehne*, 649 S.W.3d 590, 602 (Tex. App.—Houston [1st Dist.] 2022, no pet.). Because Mother's request was late, the trial court did not have to comply with it.

The timeliness of Mother's request, however, has one other variable. We note that Mother filed a nearly identical request about ten months earlier on August 6, 2024. We do not treat her August 2024 request as a premature request in conjunction with the trial court's May 5, 2025 final order. *See* Tex. R. Civ. P. 306c.

Contextually, Mother filed her August 2024 request after the July 1, 2024 de novo hearing before the district judge that resulted in the September 10, 2024 temporary order. Mother's August 2024 request was a premature filing for purposes of the September 10, 2024 order. *See id.* In August 2024, Mother had no basis to request findings of fact and conclusions of law for a bench trial that would not occur until March 2025.

19

Regarding her August 2024 request, Mother complains that the trial court ignored it. The trial court properly ignored it; she was not entitled to findings of facts and conclusions of law on the September 10, 2024 temporary order. *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997); *Dinkins v. Calhoun*, No. 02-17-00081-CV, 2018 WL 2248572, at *9 (Tex. App.—Fort Worth May 17, 2018, no pet.) (mem. op.); *see* Tex. R. App. P. 27.2. Although unclear, Mother appears to argue that the hearings before the associate judge, the district judge, and the visiting judge all resulted in final orders. Because all three hearings effectively litigated the same issue, Mother's confusion is understandable. Nevertheless, the hearings before the associate judge and the district judge were to determine temporary orders pending final resolution of the case. The Texas Family Code authorizes the trial court to enter temporary orders. *See* Tex. Fam. Code Ann. § 156.006. In any event, a final order moots any complaint regarding a temporary order. *In re J.J.R.S.*, 627 S.W.3d 211, 225 (Tex. 2021); *In re A.K.*, 487 S.W.3d 679, 683 (Tex. App.—San Antonio 2016, no pet.). Here, the trial court's May 5, 2025 final order mooted any complaint regarding the September 10, 2024 temporary order.

## VI.  Conclusion

We hold that Mother has not shown that the trial court abused its discretion, overrule her issue, and affirm the trial court's modification order. *See* Tex. R. App. P. 44.1.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  November 26, 2025